### S11A1059. CADE v. THE STATE.
(716 SE2d 196)

CARLEY, Presiding Justice.

After a jury trial, Appellant Shannon Cade was found guilty of the malice and felony murder of Brittney Wells, aggravated assault, and concealing the death of another. The felony murder verdict was vacated by operation of law, and the trial court merged the aggravated assault count into the malice murder. The trial court sentenced Appellant to life imprisonment for malice murder and to a consecutive ten-year term for concealing the death of another. A motion for new trial was denied, and he appeals.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that the 17-year-old victim dated Appellant, who was the same age. On January 14, 2009, the victim was visiting Appellant at his mother's apartment. Appellant's mother was not at home, but Ha Vuong (Ha) was present. He was 14 years old, lived in the same apartment complex, and frequently visited Appellant's apartment. Ha testified that Appellant told him that the victim threatened to charge them with rape. Appellant then choked the victim until she stopped moving. With some aid from Ha, Appellant removed the victim's clothes, wiped her body down with Pine-Sol to remove fingerprints, tied a plastic bag over her head, wrapped her in a blanket, carried her outside, and placed her in the apartment complex's dumpster.

Later that night, Appellant and Ha informed Thaddeus Cade (Cade) about choking the victim to death. Cade, who is Appellant's cousin and also lives in the same apartment complex, checked the dumpster himself and called his sister, who immediately notified the police regarding the body in the dumpster. Appellant claimed that, before the victim's death, she charged at him with a knife. However,

---

[*] The crimes occurred on January 14, 2009, and the grand jury returned an indictment on March 30, 2009. The jury found Appellant guilty on January 21, 2010, and, on that same day, the trial court entered the judgments of conviction and sentences. The motion for new trial was filed on February 16, 2010, amended on December 14, 2010, and denied on January 5, 2011. Appellant filed the notice of appeal on February 3, 2011. The case was docketed in this Court for the April 2011 term and submitted for decision on the briefs.

he had no defensive knife wounds, and police were unable to find a knife. Ha testified that the victim did not threaten Appellant with a knife, though she had one. The evidence was sufficient to authorize a rational trier of fact to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *White v. State*, 287 Ga. 713, 715-717 (1) (b), (c) (699 SE2d 291) (2010).

2. Appellant contends that the State failed to prove venue beyond a reasonable doubt, because, although one witness testified that the killing took place in the apartment at a certain address in DeKalb County, no witness testified that it occurred in Georgia. However, " '[w]itnesses testifying to venue need not state that the county in which the incident occurred is in the State of Georgia. (Cit.)' [Cit.]" *Stevens v. State*, 176 Ga. App. 583, 584 (2) (336 SE2d 846) (1985). Appellant argues that in modern times there should not be a presumption in these circumstances that the crimes took place in this state. As we recently held, however, there is no reason to require explicit testimony that the county where the crime occurred is located in Georgia:

> "The Court sat, and the trial was had in the County of [DeKalb], and the proof was that the crime was committed . . . in the County of [DeKalb]. That the Court was sitting in the County of [DeKalb] and *State of Georgia* was a fact known to the Court from its own records and the public law. When therefore it was proven that the crime was committed in the County of [DeKalb], it was proven that it was committed in the County in which the Court entertained jurisdiction over it. *Non constat* that there is in *Georgia* any other County called [DeKalb]. There is no use in discussing a question like this. If such an exception were sustainable, it could be done alone by taking leave of common sense, and by yielding the solid virtue of judicial investigation to a distinction too subtle to command the least respect." [Cits.] (Emphasis in original.)

*Gresham v. State*, 289 Ga. 103, 104 (2) (709 SE2d 780) (2011). See also *Walker v. State*, 30 Ga. App. 275 (117 SE 822) (1923). Contrary to Appellant's further contention, there was evidence of the specific address and county where the dumpster was located. Testimony showed that the location of the dumpster was the same DeKalb County apartment complex where the murder took place. Moreover, the concealment of the victim's death began in the apartment. Thus, the State clearly met its burden of proving beyond a reasonable doubt that venue was properly in DeKalb County not only for the

murder, but also for the crime of concealing the death of another. See *Waldrip v. State*, 267 Ga. 739, 749 (13) (482 SE2d 299) (1997); *James v. State*, 274 Ga. App. 498, 500-501 (2) (618 SE2d 133) (2005).

3. Appellant asserts that the trial court erred in failing to strike two prospective jurors for cause. However, defense counsel did not move to strike one of them, Ms. Saxon, for cause, and the trial court did not err by failing to excuse her sua sponte. *Phillips v. State*, 275 Ga. 595, 596 (2) (571 SE2d 361) (2002); *Whatley v. State*, 270 Ga. 296, 297 (2) (509 SE2d 45) (1998). Appellant's attorney did move to strike the other, Ms. Kriseman, because she appeared "emotional" when she informed the court that her best friend had been killed long ago by the serial killer Ted Bundy. Although she stated that she had struggled a little with the question of impartiality, she also stated that she thought she would be impartial and that she could make a determination of Appellant's guilt or innocence based on the evidence in the case and on the law as given by the trial court.

> Whether to strike a juror for cause lies within the sound discretion of the trial court. [Cit.] For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence and the court's charge upon the evidence. [Cit.] A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. [Cit.] A conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference. [Cit.]

*Hyde v. State*, 275 Ga. 693, 696 (4) (572 SE2d 562) (2002) (where juror's friend had been killed 24 years earlier). "Nothing in [Ms. Kriseman's] answers indicated that [s]he held an opinion regarding [Appellant's] guilt or innocence . . . ." *Chandler v. State*, 281 Ga. 712, 715 (2) (642 SE2d 646) (2007) (where prospective juror's sister and estranged wife had been shot to death). See also *Hyde v. State*, supra.

> After reviewing all of this juror's responses, we conclude that the trial court did not abuse its discretion in finding that she "would remain impartial despite her past experience and her honestly expressed concerns about the possible impact of that experience upon her deliberations. (Cit.)" [Cit.]

*Roberts v. State*, 276 Ga. 258, 259 (2) (577 SE2d 580) (2003). See also

*Raheem v. State*, 275 Ga. 87, 91 (6) (560 SE2d 680) (2002) (where prospective juror's friend had been murdered), disapproved on other grounds, *Patel v. State*, 282 Ga. 412, 413 (2), fn. 2 (651 SE2d 55) (2007).

4. Appellant urges that his trial counsel was ineffective during voir dire in failing to examine Ms. Saxon and Ms. Kriseman adequately and move to strike Ms. Saxon for cause.

> "In order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that counsel performed deficiently and that the deficient performance prejudiced the defendant such that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different." [Cit.]

*Higginbotham v. State*, 287 Ga. 187, 190 (5) (695 SE2d 210) (2010). "[O]n appellate review, ' "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. (Cit.)" (Cit.)' [Cit.]" *Phillips v. State*, 277 Ga. 161 (587 SE2d 45) (2003).

Ms. Saxon stated that she had certain feelings about domestic violence issues but that she could probably listen and decide the case as a fair and impartial juror. Furthermore, she did not respond when the trial court asked her jury panel whether anyone had formed an opinion regarding Appellant's guilt or innocence. Because the transcript of voir dire does not reveal that Ms. Saxon had a fixed and definite opinion as to the issue of guilt or that she would be unable to decide the case based on the evidence and the trial court's instructions, Appellant neither overcame the strong presumption that counsel's failure to seek Ms. Saxon's removal constituted reasonable professional assistance, nor could Appellant show how he was prejudiced by that failure. *Higginbotham v. State*, supra at 191 (5) (a); *Hargett v. State*, 285 Ga. 82, 85 (3) (b) (674 SE2d 261) (2009). "Since an effort to strike the juror would have been unsuccessful, the attorney was not deficient for failing to make the losing motion to do so. [Cits.]" *Phillips v. State*, supra at 162 (a).

"The content of trial counsel's voir dire of the jury venire can be a matter of trial strategy. [Cit.]" *Morgan v. State*, 276 Ga. 72, 77 (9) (575 SE2d 468) (2003). At the hearing on the motion for new trial, Appellant's trial counsel, who is an experienced criminal defense attorney, testified that she would listen to the prosecutor's questions before making the strategic decision of whether further questioning was in her client's best interest and that she would not do anything to pollute or taint the rest of the jury pool. Indeed, during voir dire, defense counsel did further question Ms. Saxon, and she also

informed the trial court that she was relying on Ms. Kriseman's emotional reaction and did not want to taint the remaining jurors by going into the subject anymore. The trial court found that these decisions were matters of trial strategy. Counsel's "strategic decision[s] [were] reasonable and, accordingly, [Appellant's] claim that his trial counsel rendered ineffective assistance in making that decision fails. [Cits.]" *Butts v. State*, 273 Ga. 760, 765 (8) (546 SE2d 472) (2001). Moreover, Appellant failed to present the testimony of these jurors or otherwise show that, if they had been further questioned, it would have become apparent that they either had a fixed and definite opinion regarding the issue of guilt or could not decide the case based on the evidence and instructions, and that the trial court would have abused its discretion by failing to strike them for cause. Therefore, Appellant also failed to satisfy the prejudice prong of his ineffectiveness claim. *Chenoweth v. State*, 281 Ga. 7, 13 (5) (635 SE2d 730) (2006); *Rickman v. State*, 277 Ga. 277, 281 (3) (587 SE2d 596) (2003).

5. At trial, the prosecutor questioned the medical examiner as to whether, if the evidence has shown that Appellant applied pressure with his hands to the victim's neck as they moved around the room with her clawing and fighting and with him pushing her down on a bed, such evidence is consistent with the medical examiner's findings in the autopsy. Defense counsel objected on the ground that the question went to the ultimate issue for the jury, and the trial court overruled that objection. The prosecutor then asked similar questions with regard to the consistency of his observations during the autopsy with other evidence. Appellant contends that this testimony invaded the province of the jury and improperly bolstered the testimony of other witnesses.

Expert medical testimony regarding the medical circumstances of a death is admissible where, as here, those circumstances are beyond the ken of the average layman. *Bethea v. State*, 251 Ga. 328, 331 (10) (304 SE2d 713) (1983). " '(T)he fact that such [expert] testimony may also indirectly, though necessarily, involve the [other witnesses'] credibility does not render it inadmissible.' [Cits.]" *Noe v. State*, 287 Ga. App. 728, 730 (1) (652 SE2d 620) (2007).

> "Although an expert witness may not testify as to his opinion of the [other witnesses'] truthfulness, the [expert] witness may express an opinion as to whether medical or other objective evidence in the case is consistent with the [other witnesses'] story." [Cits.] Here, [the medical examiner] did not state his opinion as to the veracity of [any witness] or the defendant. He testified that [the victim's] injuries, or lack thereof, were either consistent or inconsis-

tent with the physical evidence or their testimony. Thus, his testimony was not objectionable as impermissible bolstering. [Cit.]

*Gray v. State*, 291 Ga. App. 573, 578 (2) (662 SE2d 339) (2008). Moreover, as the trial court noted in its order denying the motion for new trial, the medical examiner's testimony did not go to the ultimate issue, because Appellant admitted strangling the victim and his sole defense was that he was justified in doing so. The ultimate issue, which the medical examiner did not address, "was whether [Appellant], who presented [a justification] defense . . . , was culpable for the killing of the victim. [Cits.]" *Mangrum v. State*, 285 Ga. 676, 679 (4) (681 SE2d 130) (2009).

6. An audio recording of a prior inconsistent statement made by Cade was admitted over Appellant's objection that Cade had not been given an opportunity to listen to it. Appellant makes the same claim on appeal, arguing that the trial court erred in admitting the recording, because the State failed to comply with OCGA § 24-9-83 by giving Cade an opportunity to hear the recording and then respond to cross-examination. We initially note that the absence of the recording or its transcript in the appellate record normally "would preclude our review of the matter. [Cit.] In the present circumstances, however, the specific contents of the [recording] are not material to determining this issue, and, therefore, we do review the matter." *Courrier v. State*, 270 Ga. App. 622, 623 (1) (a) (607 SE2d 221) (2004).

The prosecutor questioned Cade in detail about the time, place, person, and circumstances attending the former statement, including the specific inconsistency at issue. This line of questioning established an ample foundation for introduction of the prior inconsistent statement. See *Williams v. State*, 304 Ga. App. 592, 594 (3) (696 SE2d 512) (2010); *Gooch v. State*, 289 Ga. App. 74, 76 (2) (656 SE2d 214) (2007).

Although OCGA § 24-9-83 provides that written contradictory statements that are in existence shall be shown or read to the witness, there is no similar language requiring [audio recordings of] statements to be [played for] the witness prior to their use for impeachment purposes.

*Byrum v. State*, 282 Ga. 608, 610-611 (4) (652 SE2d 557) (2007) (involving videotaped statement).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2011.

*Herbert Adams, Jr.,* for appellant.

*Robert D. James, Jr., District Attorney, Deborah D. Wellborn, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General,* for appellee.