In the Supreme Court of Georgia

Decided:   November 17, 2014

S14A1162. GRIMES v. THE STATE.
S14A1163. REED v. THE STATE.
S14A1516. WILLIS v. THE STATE.
S14A1533. BRANTLEY v. THE STATE.

BENHAM, Justice.

Appellants Jaqwanta Grimes, Brandon Reed, Antoine Willis, and Kyree

Brantley appeal their convictions stemming from the shooting death of Marcus

Holloway and the aggravated assault of LaQuinton Forte.  For reasons set forth

herein, we affirm.[1]  The evidence viewed in a light most favorable to the verdict

[1]The crimes occurred on January 29, 2011.  On March 19, 2012, appellants were indicted, along with a fifth co-indictee Charles Slaton, on charges of malice murder, felony murder (aggravated assault of Marcus Holloway), aggravated assault (of Marcus Holloway), aggravated assault (of LaQuinton Forte), and possession of a firearm during the commission of a crime. Appellants were tried jointly from June 25, 2012 to July 6, 2012. [Co-indictee Charles Slaton was tried separately and charges against another man Lancelot Hicks were nolle prossed after he testified for the State.]

The jury acquitted Grimes of malice murder, but found him guilty on all remaining charges. The trial court sentenced Grimes to life in prison for felony murder and twenty years to be served consecutively for aggravated assault (of LaQuinton Forte), and five years to be served for possession of a firearm during the commission of a crime.  The five-year sentence for possession of a firearm during the commission of a crime was suspended and the remaining charge of aggravated assault (of Marcus Holloway) merged into the felony murder conviction.  Grimes filed an untimely motion for new trial on August 16, 2012, and then moved to file an appeal out-of-time on October 9, 2012.  The trial court granted the motion for out-of-time appeal on October 11, 2012 and Grimes filed another motion for new trial on October 23, 2012.  Grimes obtained new appellate counsel and filed an

shows that in January 2011, co-indictee Charles Slaton (a.k.a. "Fat") had a

dispute with Dwain O'Neal.[2] On the afternoon of the shooting, Slaton was

amended motion for new trial on June 14, 2013. The trial court held a hearing on the motion for new trial as amended on October 8, 2013, and denied the motion on October 21, 2013. Grimes filed a timely notice of appeal on November 6, 2013. Grimes's case was docketed to the April 2014 term of this Court and was orally argued on September 8, 2014.

The jury acquitted Reed of malice murder, but found him guilty on all remaining charges. The trial court sentenced Reed to life in prison for felony murder and twenty years to be served consecutively for aggravated assault (of LaQuinton Forte). The five-year sentence for possession of a firearm during the commission of a crime was suspended and the remaining charge of aggravated assault (of Marcus Holloway) merged into the felony murder conviction. Reed moved for a new trial on July 17, 2012, and amended his motion on August 2 and August 12 of 2013. The trial court held a hearing on the motion for new trial as amended and denied the motion on August 19, 2013. Reed filed a timely notice of appeal on September 6, 2013, and the case was docketed to the April 2014 term of this Court for a decision to be made on the briefs.

The jury acquitted Willis of malice murder, but found him guilty on all remaining charges. The trial court sentenced Willis to life in prison for felony murder and twenty years to be served consecutively for aggravated assault (of LaQuinton Forte). The five-year sentence for possession of a firearm during the commission of a crime was suspended and the remaining charge of aggravated assault (of Marcus Holloway) merged into the felony murder conviction. Willis moved for a new trial on July 16, 2012, and amended the motion on February 4, 2014. The trial court held a hearing on the motion for new trial, as amended, on February 11, 2014, and denied the motion on February 26, 2014. Willis filed a timely notice of appeal on March 28, 2014, and the case was docketed to the September 2014 term of this Court for a decision to be made on the briefs.

The jury acquitted Brantley of malice murder, but found him guilty on all remaining charges. The trial court sentenced Brantley to life in prison for felony murder and twenty years to be served consecutively for aggravated assault (of LaQuinton Forte). The five-year sentence for possession of a firearm during the commission of a crime was suspended and the remaining charge of aggravated assault (of Marcus Holloway) merged into the felony murder conviction. Brantley moved for a new trial on July 17, 2012, and amended the motion on January 31, 2014. The trial court held a hearing on the motion for new trial, as amended, on February 4, 2014, and denied the motion on February 26, 2014. Brantley filed a timely notice of appeal in the Court of Appeals on March 12, 2014. The Court of Appeals docketed the case on June 20, 2014, and then transferred the case to this Court on June 26. The case was docketed to the September 2014 term of this Court for a decision to be made on the briefs.

[2]According to O'Neal's testimony at trial, Slaton had failed to return a gun O'Neal had given to him and O'Neal was angry about it.

visiting the apartment of a woman (hereinafter "G.S.") when O'Neal stopped by G.S.'s apartment as well. G.S. testified Slaton hid from O'Neal inside her apartment. After seeing some items of clothing he recognized as belonging to Slaton inside the apartment, including a hat that said "Ho Hater," O'Neal began looking for Slaton inside the apartment. When he could not find Slaton, O'Neal left the apartment, went to the parking lot and slashed the tires on the car which Slaton was seen driving. O'Neal then went back inside the apartment. Meanwhile, Slaton had called his friends to come get him.

According to co-indictee Lancelot Hicks (a.k.a. "Lil' Lance"), Grimes (a.k.a. "Qwan"), Brantley (a.k.a. "Corey"), Willis (a.k.a. "Nuk" or "Nook"), Reed (a.k.a. "White Boy Brandon"), and someone going by the name of "Yams" arrived at the apartment complex in two different vehicles.[3] Hicks stayed in the car he was in, but said he saw Reed, Grimes, Willis and Slaton exiting an apartment. He said Reed, Grimes, and Willis were shooting while Slaton took cover behind them. Hicks said Brantley and Yams exited the car and also began shooting. According to G.S., when the shooting started, O'Neal ran out the back

---

[3]Hicks testified he was in a white four-door vehicle with Yams and Brantley, who was driving. Hicks said Grimes and Reed were in a gray two-door vehicle with Willis, who was driving.

of her apartment and, shortly thereafter, Slaton went out the front door.[4] O'Neal testified that after going out the back window of G.S.'s apartment, he fled to his grandmother's apartment which was in a different building of the complex.

During the shooting melee that transpired in the parking lot outside G.S.'s apartment, Holloway, who was with Forte and David Moore (who was inside a car), was struck in the head and died of his injuries.[5] Hicks stated the shooters and Slaton entered their vehicles and fled. Authorities recovered twenty-three shell casings from the scene and a single bullet from the victim's body, indicating that at least four, and possibly five, different guns were used during the shooting.[6] Authorities recovered a 9mm Ruger pistol from the apartment of Willis's girlfriend[7] and recovered a .357 Glock pistol from the car Willis was riding in at the time of his arrest. The ballistics expert testified that three of the

---

[4]O'Neal and Slaton never saw each other inside the apartment.

[5]Forte and Moore were able to run away and hide to avoid getting shot.

[6]According to the State's ballistics expert, three 9mm shell casings were fired from a Ruger pistol; six 9mm shell casings were fired from either a Smith and Wesson or a Glock pistol; seven .45 shell casings were fired from the same weapon; and seven .357 shell casings were fired from a Glock .357 pistol. The .45 bullet from the victim's head was consistent with being fired from an H&K pistol.

[7]The lead detective on the case testified Slaton directed authorities to the apartment where the 9mm Luger was found and the detective confirmed Slaton was with police while they had the apartment under surveillance.

9mm shell casings recovered from the scene were fired from the 9mm Ruger pistol and the seven .357 shell casings were fired from the Glock .357 pistol recovered during Willis's arrest. The evidence showed that neither O'Neal, Holloway, Forte, nor Moore was armed with guns.

Authorities arrested Slaton first. While in jail, Slaton related details about the shooting to his cell mate Anthony Johnson and, in turn, Johnson went to authorities with the information. Johnson told authorities that Slaton told him two of the shooters used 9mm pistols, one used a .380 gun, one had a .45, and one had a .357. Johnson also told police that Slaton said the names of some of the shooters were "Nook" or "Nuk," "Corey," and/or "Brandon." Johnson told police he could get the other shooters' names. Brantley's ex-girlfriend testified that Brantley told her he was with Grimes, Willis, Slaton, and Hicks at the apartments when the shooting occurred. Hicks testified that Slaton, Grimes, Willis, and Brantley had the words "Ho Haters" tattooed on their bodies. Hicks also identified all appellants in open court as the persons he saw shooting on the day in question.

The allegations raised on appeal by each appellant are addressed below.

1. *Appellant Grimes (S14A1162).* (a) Grimes alleges the evidence presented at trial was insufficient to convict him because Hicks's testimony was uncorroborated. He argues the testimony of Brantley's ex-girlfriend merely placed him at the scene at the time of the shootings, but did not show he engaged in any criminal activity. The former OCGA § 24-4-8[8] provided that in "felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness...." This Court has held that "slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict." (Citations and internal quotations omitted.) Brown v. State, 291 Ga. 750 (1) (733 SE2d 300) (2012). See also Young v. State, 291 Ga. 627 (2) (732 SE2d 269) (2012). The corroborating evidence in itself need not be sufficient to support the conviction, but it must "be independent of the accomplice testimony and must directly connect the defendant with the crime,

---

[8]The rule announced in OCGA § 24-4-8 may now be found in the new Evidence Code at OCGA § 24-14-8.

6

or lead to the inference that he is guilty." (Citation omitted.) Threatt v. State, 293 Ga. 549 (1) (748 SE2d 400) (2013).

Here, Grimes does not dispute the testimony of Brantley's ex-girlfriend placed him at the scene of the shooting when it occurred. The record shows the ex-girlfriend's testimony was independent of Hicks's testimony, yet consistent with and corroborative of Hicks's testimony that he saw Grimes at the scene shooting a gun and then fleeing with the others.[9] Hicks's testimony was corroborated in other ways as well. For example, Hicks's testimony identifying five shooters was consistent with the physical evidence collected from the scene and from the victim's body, as well as consistent with the testimony of the ballistics expert who stated that there were at least four and possibly five shooters. Johnson also told police about five guns used during the incident, thereby indicating there were likely five shooters. In addition, O'Neal testified that inside G.C.'s apartment he saw an item of clothing with the words "Ho Hater" which he recognized as belonging to Slaton. This evidence was

---

[9]Brantley's statements to his ex-girlfriend were admissible pursuant to the coconspirator exception to the hearsay rule (see the former OCGA § 24-3-5), and the jury was authorized to consider them, along with Hicks's testimony and the other evidence in the case, to reach its verdict. Unlike the dissent suggests, the evidence used to corroborate Hicks's eyewitness account of the shooting was not required to be sufficient in and of itself to convict Grimes. Threatt v. State, 293 Ga. at 552.

consistent with Hicks's testimony that Grimes and Slaton had the words "Ho Haters" tattooed on their bodies. The evidence was sufficient for a rational trier of fact to find Grimes guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979); Threatt v. State, supra, 293 Ga. at 551-552.

(b) Grimes contends the trial court erred when it charged the jury on the Black's Law dictionary definition of "corroborating evidence" in response to the jury's question asking for a definition of the term "slight corroboration." Rather than giving said definition, Grimes argues the trial court should have given a recharge on accomplice testimony. The record shows the trial court instructed the jury as follows on accomplice testimony:

> The testimony of the accomplice alone is not sufficient to warrant a conviction.
>
> The accomplice's testimony must be supported by other evidence of some type. And that evidence must be such as would lead to the inference of the guilt of the accused independent of the testimony of the accomplice.
>
> It is not required that supporting evidence be sufficient to warrant a conviction or that the testimony of the accomplice be supported in every material particular.

8

The supporting evidence must be more than that a crime was actually committed by someone. It must be sufficient to connect the accused with the criminal act and must be more than sufficient to merely cast upon the accused a grave suspicion of guilt.

Slight evidence from another source that connects the accused with the commission of the alleged crime and tends to show participation in it may be sufficient supporting evidence of the testimony of an accomplice.

In order to convict, that evidence, when considered with all of the other evidence in the case, must be sufficient to satisfy you beyond a reasonable doubt that the accused is guilty.

Whether or not any witness in this case was an accomplice is a question for you to determine from the evidence in this case.

The testimony of one accomplice may be supported by the testimony of another accomplice. Whether or not the testimony of one accomplice does, in fact, support the testimony of another accomplice is a matter for you to determine.

The sufficiency of the supporting evidence of an accomplice is a matter solely for you to determine.

After deliberating for a time, the jury posed a question to the trial court asking for a definition of "slight corroboration." The trial court proposed instructing the jury to use the everyday meaning of the word "slight" and then to give them the definition of "corroborate" and "corroborating evidence" from Black's Law Dictionary. The State asserted it would be fine with giving the

9

Black's Law Dictionary definition of "corroborating evidence." Counsel for Willis objected and asked that the trial court instruct the jury to use the everyday usage of "slight corroboration." Counsel for Reed joined in Willis's objection. Counsel for Brantley asked that the trial court respond by recharging the jury on accomplice testimony. Counsel for Grimes joined both stated objections. After the discussion, the trial court charged the jury as follows in response to their request for a definition of "slight corroboration":

> As to the word slight, you would apply the ordinary meaning attributed to that word. As to the definition of corroboration, I would charge you as follows: corroborating evidence is evidence supplementary to that already given intending to strengthen or confirm it.

All of the defendants renewed their objections to the charge.

On appeal, Grimes argues that giving this Black's Dictionary definition of "corroborating evidence" was erroneous because it allowed the jury to convict him on less corroboration than required by law. We disagree. When determining whether a charge is erroneous, we look to the charges given as a whole. Franklin v. State, 295 Ga. 204 (3) (758 SE2d 813) (2014). Here, the jury was properly instructed on the full scope of accomplice testimony and the definition of "corroborating evidence" given by the trial court was an accurate

10

statement consistent with the law. We note also that the instruction on accomplice testimony was devoid of the term "slight corroboration," but rather used the terms "supporting evidence" and "slight evidence from another source." Accordingly a recharge on accomplice testimony would not have been specifically responsive to the jury's question. There was no reversible error. See <u>Lee v. State</u>, 283 Ga. App. 826 (3) (642 SE2d 876) (2007) (trial court did not err in including a charge on the Black's Law dictionary definition of fraud).

(c) Grimes contends the trial court manifestly abused its discretion when it denied his request to strike Jurors 7 and 15 for cause. The record shows Juror 7 stated she was the victim of a mugging in 1985 in New York. In spite of that experience, she said she believed she could be impartial in regard to the case at bar. When counsel for Willis asked her whether there was a "possibility" that the prior mugging could affect her ability to be fair and impartial, she stated that it could. Juror 15 stated that twenty years ago he was twice held at gunpoint, including an incident in which six youths pointed assault rifles at him. When asked if he could be fair and impartial in regard to the case at bar, he stated, "I think so." He went on to explain the reservation in his answer as follows:

11

"Well, I'm just trying to picture myself being fair and impartial, see if I could see myself being that person."

"An appellate court pays deference to the trial court's resolution of any equivocations or conflicts in a prospective juror's responses. The determination of a potential juror's impartiality is within the trial court's sound discretion and the trial court will only be reversed on such matter upon finding a manifest abuse of discretion." (Citations omitted.) Thompson v. State, 294 Ga. 693 (6) (755 SE2d 713) (2014). The law does not require the striking of jurors simply because they express some doubt of their own impartiality. Cade v. State, 289 Ga. 805 (3) (716 SE2d 196) (2011). Here, neither potential juror expressed a position that was so fixed and definite that they would not be able to decide the case based on the evidence and the trial court's instructions. See id. at 807. Grimes has failed to show that the trial court manifestly abused its discretion in failing to strike these jurors for cause.

2. *Appellant Reed (S14A1163)*. (a) Under the former OCGA § 24-3-5, "[a]fter the fact of the conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible

against all."[10]  In this case, the State presented evidence of statements Slaton made to his cell mate Anthony Johnson.  The evidence was presented via the testimony of Johnson and the testimony of the detective who interviewed Johnson.  Reed claims the admission of Slaton's statements was error because they were not made in furtherance of a conspiracy and because they were not made during the concealment phase of a conspiracy.

The record shows that immediately prior to Johnson's taking the stand, counsel for Willis moved in limine to preclude Johnson from testifying about anything Slaton had told him.  The State argued that Slaton's statements to Johnson fell within the coconspirator exception to the hearsay rule because: the statements were within a few days of Slaton's arrest;[11] the statements were made while the other defendants were still at-large; the statements were made to Johnson, a third-party, rather than made to police; and the statements were made during the concealment phase of the conspiracy.  Counsel for Willis countered that once Slaton was in custody, the conspiracy had ended and therefore the

[10]Statements by a coconspirator are now governed by the new Evidence Code at OCGA § 24-8-801 (d) (2) (E).

[11]The police arrested Slaton on February 1, 2011, and Johnson spoke with police on February 8.

statements were outside the coconspirator exception to the hearsay rule. The attorneys for Reed, Brantley, and Grimes joined Willis's motion in limine on these grounds. In addition, counsel for Grimes argued that Slaton's statements lacked any indicia of reliability. Upon considering the parties' arguments, the trial court admitted Johnson's testimony regarding the statements made to him by Slaton. In making this ruling, the trial court found: the State had proven a conspiracy existed; the statements had a sufficient indicia of reliability; and the statements were made during the concealment phase of the conspiracy. Upon hearing the trial court's ruling, all the appellants made a continuing objection to Johnson's testimony.

When Johnson took the stand, he testified that he spoke with police at Slaton's request. In response to a specific question by the prosecutor, Johnson said that he did not recall telling police about the types of guns Slaton told him were used at the shooting. At that point, counsel for Brantley objected to the prosecutor asking leading questions and the jury was excused so that the parties could argue the matter outside its presence. The State argued it was entitled to use the written statement Johnson gave to police for impeachment purposes because Johnson said he could not recall what he said to police. The State also

argued that Johnson's oral and written statements were admissible as prior inconsistent statements and could be used for impeachment purposes and as substantive evidence. Counsel for Brantley objected on the grounds that the statements constituted double hearsay and argued that if Johnson did not remember what he said to police, then impeachment was improper and the proper procedure was for the State to use Johnson's written statement to refresh his recollection. Counsel for Reed and Grimes joined Brantley's objection. The trial court then instructed the prosecutor to attempt to use Johnson's written statement to refresh his recollection. The trial court also ruled that the State could treat Johnson as a hostile witness and ask him leading questions. Counsel for Willis then raised an objection to Johnson's testimony on the ground that Johnson had just testified Slaton requested him to go to police and so Slaton's statements were outside the coconspirator exception to the hearsay rule. Reed and Grimes joined this objection.

When Johnson reviewed his written statement to police, he stated that it did not refresh his recollection. The State then re-called to the stand the detective who interviewed Johnson. The detective said Johnson never told him Slaton had asked Johnson to talk to police on his behalf. The detective

confirmed Johnson made written and oral statements to police in which he identified the five guns used during the incident, and identified some of the names of the alleged perpetrators ("Nook" or "Nuk," "Corey," and/or "Brandon"). The State then sought to tender into evidence Johnson's written statement and all of the appellants objected on the "same grounds." The trial court ruled that Johnson's written statement was admitted for purposes of the record, but directed it would not go out with the jury during its deliberations.

(i) Reed asserts Slaton's statements were not made in furtherance of a conspiracy because his statements assigned blame to others. Reed, however, has waived this specific argument on appeal because he did not raise it to the trial court.[12] Sanchez v. State, 285 Ga. 749 (3) (684 SE2d 251) (2009).

(ii) Reed next argues Slaton's statements were not in the furtherance of a conspiracy because they were made with the intent that they be communicated to authorities. Arguably, Reed raised this argument when he joined Grimes's objection that Slaton's statements were outside the coconspirator exception to

[12]Likewise, Reed did not join Grimes's objection that Slaton's statements lacked indicia of reliability. We note that the case law requiring coconspirator hearsay to have an indicia of reliability was based on constitutional Confrontation Clause grounds that have since been undermined. See Stinski v. State, 286 Ga. 839, 848-849 n.2 (38) (691 SE2d 854) (2010).

the hearsay rule because Johnson testified Slaton told him to talk with police. The detective who interviewed Johnson, however, testified that Johnson never told police that Slaton had sent him. In its order on Reed's motion for new trial, the trial court found Johnson's testimony that Slaton told him to go to police was not credible. In the absence of a showing of clear error, we do not disturb the trial court's credibility determinations. Christopher v. State, 269 Ga. 382 (2) (497 SE2d 803) (1998). Given the detective's testimony, it was not clearly erroneous for the trial court to conclude that Johnson was not sent by Slaton to talk to police.[13]

(iii) Reed contends that Slaton's statements were not made during the concealment phase of the conspiracy. This argument is without merit. The concealment phase was ongoing because the statements in question were not made to police, the investigation was ongoing, and the other conspirators, including Grimes who was not mentioned to police by Johnson, were still at-large. Ottis v. State, 269 Ga. 151, 154-155 (3) (496 SE2d 264) (1998) (conspiracy was still in the concealment phase when coconspirator made

---

[13]Reed's complaints about the trial court's taking judicial notice of Slaton's trial proceedings are therefore inapposite.

17

statements to his cell mate). Reed has failed to show that Slaton's statements to Johnson were inadmissible.

(b) Reed contends his conviction must be overturned because Hicks's testimony was uncorroborated, or, in the alternative, the corroborating evidence was insufficient to convict. Again, evidence corroborating the testimony of an accomplice need only be "slight" and from an "extraneous source." Brown v. State, supra, 291 Ga. at 752; Young v. State, supra, 291 Ga. at 629. Here, the slight evidence from an extraneous source came from the testimony of Johnson and the detective who interviewed him. Johnson indicated to police that five guns were used and that one of the shooters went by the name of Brandon. This evidence corroborated Hicks's testimony identifying Reed as one of the five shooters he saw on the day in question. As such, the evidence was sufficient for a rational trier of fact to find Reed guilty beyond a reasonable doubt of the crimes for which he was convicted. Id.; Jackson v. Virginia, supra, 443 U.S. 307.

(c) Reed complains the trial court erred when it charged the jury on the Black's Law Dictionary definition of "corroborating evidence" when the jury

asked for a definition of "slight corroboration." For the reasons set forth in Division 1 (b) of this opinion, this allegation of error is without merit.

(d) Reed contends his trial counsel was constitutionally ineffective when she failed to object to the testimony of the detective who interviewed Johnson and when she failed to make an objection based on the Sixth Amendment to the evidence concerning Slaton's statements to Johnson. In order to prevail on a claim of ineffective assistance of counsel, Reed

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) Pruitt v. State, 282 Ga. 30, 34 (4) (644 SE2d 837 (2007). If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court. Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). Here, Reed cannot show counsel was deficient. First, all the appellants, including Reed, had a continuing objection regarding the admission of any evidence of Slaton's statements to Johnson. This objection encompassed the testimony of the detective who

19

interviewed Johnson. Secondly, any objection based on the Sixth Amendment would have been without merit. Since Slaton made the statements to Johnson and not to police, the statements were not testimonial and therefore created no problem under the Confrontation Clause. Young v. State, supra, 291 Ga. at 629-630 (coconspirator statements made to a third-party during the pendency of the conspiracy are not testimony). Reed cannot show his counsel was ineffective for failing to make objections that lacked merit. See Gilyard v. State, 288 Ga. 800 (2) (708 SE2d 329) (2011).

3. *Appellant Willis (S14A1516).* (a) Willis alleges the trial court erred when it admitted Slaton's statements to Johnson because he contends Slaton's statements were akin to a confession and Johnson acted as Slaton's agent to speak with the police. Willis further argues that such a confession could only be admitted against Slaton because the criminal enterprise and concealment phase had ended. For the reasons stated in Division 2 (a) (ii)-(iii), these arguments are without merit.

(b) Willis contends the trial court erred when it denied his request for charges on the lesser included offenses of involuntary manslaughter and reckless conduct. A trial court is not required to give a charge on a lesser included

offense if there is no evidence to support it. See Brown v. State, 288 Ga. 364 (2) (703 SE2d 609) (2010). Here, Forte testified that when the shooters arrived, they began shooting at him and that is why he ran away to hide. The evidence at trial also showed that many of the shell casings were recovered from the area of the scene where Forte and Holloway were standing. No evidence of reckless conduct was presented to the jury and thus the trial court did not err when it declined to give the charges requested. Id.

(c) Willis contends the trial court erred when it failed to strike Juror 7. For the reasons set forth in Division 1 (c) of this opinion, this allegation of error lacks merit.

4. *Appellant Brantley (S14A1533).* (a) On appeal, Brantley contends the trial court erred when it failed to remove Juror 19 for misconduct. The record shows that, in contradiction of the trial court's instructions, Juror 19, after being seated but prior to opening statements, searched the internet for a television show which featured the case at bar. Juror 19 told the other jurors what he had done, but related no details about what he had seen or heard. When the trial court inquired of him, Juror 19 said the episode, of which he only watched a few minutes, featured a crime that took place in Georgia, but the names and facts did

not match the details of the case at bar. The State asked for Juror 19 to be removed and replaced with an alternate, while appellants Grimes, Reed, and Willis moved for a mistrial. At trial, Brantley objected to removing Juror 19 because he was the only young black male on the jury. The trial court allowed Juror 19 to remain on the jury based in large part on Brantley's argument and based on the fact that it did not appear Juror 19 had found any details about the case or shared any details with the other jurors. Given the fact that Brantley's conduct engendered the trial court's ruling of which he now complains, this allegation of error cannot be sustained on appeal. See White v. State, 278 Ga. 355 (2) (602 SE2d 594) (2004).

(b) Brantley avers the trial court erred when it admitted the statements Slaton made to Johnson because the statements lacked an indicia of reliability and because there was no conspiracy. The facts regarding this allegation of error are set forth in Division 2 (a) of this opinion. Although Grimes made an objection that Slaton's statements lacked an indicia of reliability, Brantley did not join in that objection or make his own objection on that basis. Likewise, Brantley never made a specific argument that a conspiracy did not exist, but, rather, he joined Willis's motion in limine in which Willis argued that the

22

conspiracy had ended with Slaton's arrest, which argument the trial court properly rejected. Since Brantley failed to make these specific arguments below, they are waived on appeal. Sanchez v. State, supra, 285 Ga. at 752. Slaton's statements to Johnson were admissible as set forth in Division 2 (a) (ii)-(iii) of this opinion.

(c) Brantley contends the trial court erred when it allowed the State to recall the detective who interviewed Johnson to testify as to Johnson's prior inconsistent statements. In support of this allegation, Brantley argues that "Johnson's testimony was solely to the improperly admitted hearsay evidence from coconspirator Slaton." As we have already held, Slaton's statements to Johnson were properly admitted pursuant to the coconspirator exception to the hearsay rule. This allegation of error is without merit.

(d) Brantley argues that the verdict must be set aside because the evidence preponderates heavily against the verdict and because the evidence was otherwise insufficient to convict him. At trial, Brantley's ex-girlfriend testified Brantley admitted to her that he was present at the scene when the shooting occurred and that he was with Willis, Grimes, Hicks, and Slaton at the time. In addition, Johnson told police Slaton said someone named "Corey" was one of

the perpetrators. This evidence was the slight evidence necessary to corroborate Hicks's testimony that Brantley drove to the crime scene and began shooting along with the other appellants. As such, the evidence was sufficient for a rational trier of fact to find Brantley guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, supra, 443 U.S. 307; Young v. State, supra, 291 Ga. at 629.

Judgment affirmed in Case Number S14A1162. All the Justices concur, except Melton, J., who dissents. Judgments affirmed in Case Numbers S14A1163, S14A1516, and S14A1533. All the Justices concur.

S14A1162. GRIMES v. THE STATE.
S14A1163. REED v. THE STATE.
S14A1516. WILLIS v. THE STATE.
S14A1533. BRANTLEY v. THE STATE.

MELTON, Justice, dissenting.

Although I concur in Case Nos. S14A1163, S14A1516, and S14A1533, I must respectfully dissent in Case No. S14A1162 because I believe that the evidence was insufficient to support the verdict against Jaqwanta Grimes. Specifically, there was no evidence to corroborate co-defendant Lancelot Hicks's testimony that Grimes participated in the shooting of Marcus Holloway.

Under former OCGA § 24–4–8, it is well-settled that, in felony cases where the only witness is an accomplice, the testimony of that accomplice must be supported by at least one other witness or by corroborating circumstances.

> The additional evidence that is required "may be circumstantial and it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged." (Punctuation and citations omitted.) Johnson v. State, 288 Ga. 803, 805 (2) (708 SE2d 331) (2011); accord Williams v. State, 280 Ga. 584 (1) (630 SE2d 370) (2006); Selvidge v. State, 252 Ga. 243, 245 (313 SE2d 84) (1984). It must, however, be independent of the accomplice's testimony and either directly connect the defendant with the crime or justify an inference that he is guilty. Johnson, [supra], 288 Ga. at 805; Williams, [supra,] 280 Ga. at 585–586. In addition, the independent evidence must corroborate both the identity of the defendant and the

fact of his participation in the crime. See <u>Kesler v. State</u>, 249 Ga. 462 (2) (291 SE2d 497) (1982); <u>Birt v. State</u>, 236 Ga. 815 (225 SE2d 248) (1976). In other words, corroboration of only the chronology and details of the crimes is not sufficient, and there must be some independent evidence tending to show that the defendant himself was a participant in the crimes. <u>West v. State</u>, 232 Ga. 861 (2) (209 SE2d 195) (1974).

<u>Crawford v. State</u>, 294 Ga. 898, 900-901 (1) (757 SE2d 102) (2014).

In this case, the only evidence that Grimes *participated* in the shooting in question, as opposed to simply being present when it occurred, comes solely from Hicks, an accomplice. Hicks did testify that Grimes was one of the shooters at the scene, but nothing else in the record corroborates this statement that Grimes was a participating party. In finding otherwise, the majority recites three pieces of evidence, none of which actually shows participation. First, the majority lists the testimony of Kyree Brantley's ex-girlfriend; however, that testimony merely places Grimes at the scene- nothing more. Second, the majority points to the fact that a ballistics expert opined that there were four or five shooters at the scene. This in no way corroborates Hicks's testimony that Grimes was one of those shooters. Third, the majority relies on testimony that Grimes had the words "Ho Haters" tattooed on his body. Again, this does not

2

show that Grimes participated in the shooting on the day in question; it shows a mere association with Charles Slaton, who has a similar tattoo. At best, the evidence relied upon by the majority supports the inference that somebody else was involved, but then makes the leap to conclude that the "somebody else" must be Grimes since he was present. This is not sufficient evidence of participation, which is required by law.

Therefore, a review of the record, including the evidence identified by the majority, shows that there is no corroborating evidence of Hicks's testimony that Grimes participated in the shooting of Holloway. Accordingly, I dissent.