302 Ga. 176
FINAL COPY

S17A1033.  TAYLOR v. THE STATE.

BENHAM, Justice.

Appellant Mark Antonio Taylor appeals his convictions related to the death of Charles Ernest Weaver.[1]  In the early morning hours of December 28, 2012, appellant was wandering around Hall County, trying to figure out a way to get back to Atlanta.[2]  He entered the parking lot of a car dealership where he came across a truck, which had its engine running and its lights on. Seeing no one around, appellant entered the vehicle and began driving it in reverse.  The victim, who worked at the dealership, attempted to stop appellant from stealing the truck by pulling out a pocket knife and dialing the

[1] The crimes occurred on December 28, 2012.  On January 14, 2013, a Hall County grand jury indicted appellant on charges of malice murder, felony murder (armed robbery), felony murder (aggravated assault), felony murder (theft by taking), armed robbery, aggravated assault, theft by taking, and possession of a firearm during the commission of a crime.  After a trial that took place May 5-7, 2014, the jury returned verdicts of guilty on all charges.  On May 8, 2014, the trial court sentenced appellant to serve life in prison without parole for malice murder plus a term of years for the underlying felonies for which he was charged.  The counts of felony murder were vacated as a matter of law.  Appellant moved for a new trial on May 21, 2014.  On September 9, 2016, the trial court held a hearing on the motion for new trial and denied the motion on September 21, 2016.  On October 4, 2016, appellant filed a notice of appeal directed to the Court of Appeals which transferred the case to this Court.  The case was docketed to the April 2017 term of this Court and submitted for a decision to be made on the briefs.

[2] On the afternoon of December 27, 2012, appellant's girlfriend expelled him from her car after the two had a fight.

police on his cell phone. Appellant got out of the truck, pulled out a gun and forced the victim to drop his knife and cell phone. Appellant then forced the victim to walk toward the building and shot the victim once. The victim attempted to run away and hide inside the building, but appellant followed him and shot him a second time. Appellant then fled in the truck, taking the victim's cell phone and pocket knife with him. A significant portion of appellant's encounter with the victim was caught on the dealership's video surveillance system. The victim was found deceased by a co-worker. The medical examiner testified the victim died from a bullet that entered and exited his arm and then re-entered his body through his chest, damaging his lungs and a major artery to his heart such that he bled to death.

Police tracked the stolen vehicle to an apartment complex in Atlanta, used the apartment's surveillance system to link appellant to the truck, and found appellant in an apartment with some of his relatives. Inside the apartment, police recovered the victim's knife and appellant's Hi-Point .45 caliber handgun, which was determined to be the murder weapon. They also found the victim's cell phone in the truck. As he was being arrested, appellant kept repeating "Yeah, I did it" and "I killed him." During his trial

testimony, appellant admitted the victim was unarmed both times he shot him.

1. The evidence summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which the jury returned verdicts of guilty. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant complains that trial counsel's questioning of prospective jurors was too brief to be effective and contends counsel should have moved to strike three jurors for cause. In order to prevail on a claim of ineffective assistance of counsel, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) Pruitt v. State, 282 Ga. 30 (4) (644 SE2d 837) (2007). If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court. Wright v. State, 291 Ga. 869 (2) (734 SE2d 876) (2012). The content of trial counsel's voir dire of the jury venire can be a matter of trial strategy and, if within the broad range of reasonable professional assistance, will not sustain

3

a claim that counsel was constitutionally ineffective. See Ford v. State, 298 Ga. 560 (8) (a) (783 SE2d 906) (2016); Cade v. State, 289 Ga. 805 (4) (716 SE2d 196) (2011); Morgan v. State, 276 Ga. 72 (9) (575 SE2d 468) (2003). Likewise, the decision as to which jurors to strike is a strategic decision that, if reasonable, will not support an allegation that counsel's performance was deficient. See Brown v. State, 301 Ga. 728 (4) (804 SE2d 16) (2017); Simpson v. State, 298 Ga. 314 (4) (781 SE2d 762) (2016); Lockhart v. State, 298 Ga. 384 (2) (782 SE2d 245) (2016).

At the motion for new trial hearing, trial counsel testified that once the prosecutor completed her voir dire, there were not many questions that needed to be asked of the prospective jurors. He also testified that appellant assisted with jury selection and any decisions made as to juror strikes were strategic in nature. For example, in reference to Juror 41, who was a domestic violence victim and stated she "did not know" whether her experience would impact her ability to be fair, trial counsel said he decided not to move to strike her because he believed she might be sympathetic to appellant. Our review of the transcript reveals that none of the jurors who were seated on the jury expressed an opinion during voir dire that was so

fixed that they could not be fair and impartial.[3]  Counsel's performance was not deficient and, accordingly, appellant's claim of ineffective assistance must fail.

3.  Prior to trial, the State sought admission of evidence that appellant's girlfriend expelled him from her car because he punched her in the face.  The trial court ruled that the details of the fight were irrelevant and the parties agreed that the only information that would be provided to the jury was that, a day before the shooting, appellant was expelled from his girlfriend's car because of a fight.  At trial, appellant took the stand and testified as follows on direct examination:

> Q: Did [you and your girlfriend] get into an argument that day?
> A: Yes, we did.
> Q:  And were you riding with her?
> A: Yes, I was.
> Q: And what happened after [you all] got into an argument?
> A:  Well, when we got in an argument, I told her necessarily I didn't want to fight with her, and she put me out of the car.

Immediately prior to its cross-examination of appellant and outside the presence of the jury, the State argued it was entitled to question appellant

---

[3] In addition to Juror 41, appellant opines that Jurors 52 and 29 were biased.  Juror 52 worked at a competing car dealership and had heard some information about the case, but was "foggy" as to what he had heard.  Juror 52 said, however, there was nothing about what he had heard that would prevent him from being fair and impartial if selected to serve.  Juror 29 was actually removed upon motion by the State and did not serve on the jury.  Appellant has otherwise failed to prove that he was affected by any purported juror bias.

about the reasons he was expelled from his girlfriend's car because appellant was dishonest when he testified, "I told her necessarily I didn't want to fight with her, and she put me out of the car." Over appellant's objection, the trial court ruled the prosecutor could cross-examine appellant as to whether he had fought with his girlfriend. Upon this ruling, the prosecutor asked appellant whether he physically fought with his girlfriend and, in response, appellant stated that he and his girlfriend had hit each other. When the prosecutor asked whether the girlfriend had any injuries, counsel objected, but the trial court allowed that line of questioning to proceed. Counsel posited another objection when the prosecutor asked whether appellant was aware his girlfriend had called the police. At that point, the parties conferred outside the presence of the jury, and defense counsel moved for a mistrial. The trial court denied the motion for mistrial, instructed the prosecutor to stay away from any questions regarding whether the girlfriend called the police,[4] and then informed the jury that defense counsel's last objection had been sustained. The prosecutor moved on to another line of questioning. During its closing, the prosecutor referenced the altercation without any objection from defense counsel.

---

[4] Appellant had no direct knowledge as to whether his girlfriend contacted police after she ousted him from her car.

Appellant asserts the trial court committed "plain error" when it allowed the State to cross-examine appellant about the altercation with appellant's girlfriend. Appellant also contends trial counsel was ineffective when he failed to object to the prosecutor's mentioning the incident during closing argument. We disagree with both assertions of error.

As an initial matter, since counsel objected to the testimony in question, the matter has been preserved for appellate review and is not subject to review for plain error. Rather, we review the propriety of the trial court's admission of the evidence for an abuse of discretion. Parker v. State, 339 Ga. App. 285 (1) (793 SE2d 173) (2016). The prosecutor's cross-examining appellant about the nature of the altercation with his girlfriend was admissible for the purpose of impeachment inasmuch as appellant testified dishonestly about the reasons why he had been ejected from his girlfriend's car. See OCGA § 24-6-621 ("A witness may be impeached by disproving the facts testified to by the witness.").[5] See also Parker v. State, supra, 339 Ga. App. at 289-290. "When the criminal defendant takes the stand, any

---

[5] The language in OCGA § 24-6-621 has generally been carried forward from the former OCGA § 24-9-82. See Jack Goger, Ga. Handbook on Criminal Evidence § 6:18 (August 2017). OCGA § 24-6-621 has no counterpart in the Federal Rules of Evidence; however, federal jurisprudence does recognize impeachment by contradiction and there is some consensus that OCGA § 24-6-621 may be read in conjunction with OCGA §§ 24-6-607 and/or 24-6-613 (b), as well as their federal counterparts. Id.; Ronald L. Carlson, Carlson on Evidence, 351-352 (5th ed. 2016).

discrepancies in his testimony may be 'fully explored' on cross-examination regardless of their relevance or the fact that it may reflect poorly on the defendant's character." Paul S. Milich, Ga. Rules of Evidence § 14:2 (September 2017). See also Francis v. State, 266 Ga. 69 (2) (463 SE2d 859) (1995) ("The prohibition against the State's introduction of character evidence unless and until the defendant places his own character into issue 'does not preclude use of . . . evidence to disprove facts testified to by the defendant.' [Cit.]"). In addition, the State had a right to a thorough and sifting cross-examination of appellant's direct testimony. See Parks v. State, 300 Ga. 303 (3) (794 SE2d 623) (2016); OCGA § 24-6-611 (b). The trial court did not abuse its discretion when it allowed the State to impeach appellant as it did. Francis v. State, supra, 266 Ga. at 71. Since the testimony in question was admissible, counsel was not deficient for failing to object when the prosecutor mentioned the matter during closing argument. See Woods v. State, 271 Ga. 452, 454 (3) n. 9 (519 SE2d 918) (1999).

4. The lead investigator testified as a witness for the State's case-in-chief. During cross-examination, defense counsel asked the investigator several questions about his opinion about the viability of a self-defense claim. On re-direct, the State asked follow-up questions regarding self-

defense. On appeal, appellant complains plain error was committed when the investigator was allowed to testify about his opinion on the issue of self-defense. This assertion of error is specious. At the motion for new trial hearing, counsel testified he deliberately asked the investigator about self-defense in order to introduce the topic to the jury prior to appellant's taking the stand. Appellant cannot be heard to complain about any alleged error, including plain error, which his actions engendered. See Adkins v. State, 301 Ga. 153 (2) (800 SE2d 341) (2017); Grimes v. State, 296 Ga. 337 (4) (a) (766 SE2d 72) (2014).

Judgment affirmed. All the Justices concur.

Decided October 2, 2017.

Murder. Hall Superior Court. Before Judge Oliver.

Larry L. Duttweiler, for appellant.

Lee Darragh, District Attorney, Wanda L. Vance, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.