315 Ga. 263
FINAL COPY

S22A1005.  MOORE v. THE STATE.

PINSON, Justice.

Jordy Moore was convicted of malice murder and other crimes arising from what began as a group fistfight and ended with the shooting death of Zyshonne Hindsman.[1] On appeal, Moore contends

---

[1] The crimes occurred on July 4, 2017. On December 5, 2017, a Fulton County grand jury indicted Moore along with Frankie Young. Count 1 charged both defendants with the malice murder of Hindsman. Counts 2 through 6 charged the defendants with the felony murder of Hindsman, predicated respectively on aggravated assaults with a deadly weapon as charged in Counts 7 through 10 and on criminal damage to property as charged in Count 11. Each of Counts 7 through 10 specified a different victim of aggravated assault—respectively, Hindsman, Broderick Dunn, Quintavius Marshall, and Am'ir Benard. Count 12 charged the defendants with possessing a firearm during the commission of a felony. Prior to trial, Young pled guilty to one count of felony murder, one count of aggravated assault, criminal damage to property, and possessing a firearm during the commission of a felony. Moore was tried by a jury from August 13 to 20, 2018, and was convicted on all counts. He was sentenced to life in prison for Count 1, 20 years in prison for each of Counts 8 through 10, ten years in prison for Count 11, and five years in prison for Count 12, all to be served consecutively, for a total sentence of life plus 75 years. The remaining counts merged for sentencing or were vacated by operation of law. On September 18, 2018, Moore filed a motion for new trial, which he amended through new counsel on July 19, 2020. Following a hearing, the trial court denied the motion on May 3, 2022. Moore filed a timely notice of appeal on May 4, 2022. The case was docketed to the August 2022 term of this Court and submitted for a decision on the briefs.

that his trial counsel rendered ineffective assistance by failing to conduct an adequate voir dire, making incorrect statements of fact and law in his opening statement, failing to object to the testimony of the victim's grieving mother, and failing to adequately cross-examine certain prosecution witnesses about their pending criminal charges. He also contends that the trial court impermissibly participated in Young's decision to testify against Moore, and that the court violated OCGA § 17-8-57, which prohibits a judge from expressing or intimating to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.

We affirm Moore's convictions and sentence. First, Moore failed to prove he received ineffective assistance of counsel. Trial counsel's voir dire was within the wide range of reasonable professional assistance; trial counsel's decision to avoid potentially antagonizing the jury by objecting to the testimony of a grieving mother was not an unreasonable strategy; it was reasonable for trial counsel not to question the State's witnesses further about their criminal charges

2

given the testimony already elicited on that subject; and Moore failed to prove that he was prejudiced by counsel's misstatements of the facts or law in his opening statement. Second, any error of the trial court in influencing Young to testify was harmless, because Young's testimony was cumulative of other witnesses or even helpful to Moore. Finally, the trial court did not violate OCGA § 17-8-57, because one of the comments Moore takes issue with was made outside the presence of the jury, and the other was a straightforward exchange with the State about the admissibility of testimony about an uncontested fact.

1. We start with the pertinent evidence from Moore's trial.[2] On the evening of July 4, 2017, Broderick Dunn was walking up the street in his neighborhood when two cars pulled up next to him. In the cars were Frankie Young, who had had a dispute with Dunn online earlier that day, along with Moore and a few others. Young

_____

[2] In light of the harmless-error analysis we undertake in Division 2 of this opinion, "we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." *Fletcher v. State*, 303 Ga. 43, 47 (II) (810 SE2d 101) (2018) (citation and punctuation omitted).

3

and Moore jumped out. Moore had a pistol tucked into his pants. Young approached Dunn aggressively, and the two started fighting.

A little ways up the street, Dunn's friends—Hindsman, Quintavius Marshall, and Am'ir Benard—heard the commotion and ran to Dunn's aid. Young's other friends got out of their cars to help him. A four-on-four brawl broke out. After a few minutes, the fight turned against Young's side, and that group began to retreat back to their cars.

As Young was running toward the cars, he shouted for Moore to give him the gun that Moore had brought. The main dispute at trial concerned what happened next. Young testified that he "snatched" the gun from Moore while Moore was waiting by an open car door and "screaming" at Young and his friends that "it's time to go . . . just let it go. Everybody let it go. Come on. Let's go." But Dunn and another witness, Gabrielle Carson, testified that Moore "passed" the gun to Young, and Benard testified that *someone* handed the gun to Young, though he could not say who. However the gun changed hands, witnesses agreed that Moore said to Young, "[D]o what you

4

do."

Young opened fire. Hindsman, Dunn, Marshall, and Benard all fled, but Hindsman was fatally shot as he ran. Other bullets damaged the garage doors of a nearby home and a car that was parked inside. After firing, Young gave the gun back to Moore. Moore later tried to get rid of it by giving it to a friend.

2. Moore contends that his trial counsel rendered ineffective assistance in a number of ways.

To succeed on a claim of ineffective assistance, a defendant must establish both that his counsel's performance was deficient and that he was prejudiced as a result of that deficient performance. See *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)).

Counsel's performance is deficient if he "performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *Washington*, 313 Ga. at 773 (3) (citation and punctuation omitted).

The law starts with a "strong presumption" that counsel performed reasonably, and to overcome it, the defendant must show that "no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." Id. (citation and punctuation omitted). And counsel's decisions about trial tactics and strategy in particular may not form the basis of an ineffectiveness claim unless those decisions were "so patently unreasonable that no competent attorney would have followed such a course." Id. (citation and punctuation omitted).

As for prejudice, a defendant must establish that there is a "reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." *Washington*, 313 Ga. at 773 (3). A reasonable probability is a probability "sufficient to undermine confidence in the outcome" of the trial. *Neal v. State*, 313 Ga. 746, 751 (3) (873 SE2d 209) (2022) (citation and punctuation omitted).

If the defendant fails to satisfy either part of the *Strickland* test, his claim fails, and we need not address the other part. See *Washington*, 313 Ga. at 773 (3). Finally, when reviewing

6

ineffective-assistance claims, we accept the trial court's factual findings unless clearly erroneous, but we independently apply legal principles to the facts. See *Lyons v. State*, 309 Ga. 15, 25 (8) (843 SE2d 825) (2020).

(a) Moore first contends that his counsel failed to conduct an adequate voir dire of the jury.

During voir dire, trial counsel asked one general question of the prospective jurors: whether Moore having been accused of crimes caused them to believe he was guilty already. He also asked a number of questions to individual prospective jurors based on their responses to the general questions or to the State's questions. One prospective juror was excused when trial counsel elicited that the juror believed that "both sides" had a burden of persuasion at trial. Trial counsel asked other prospective jurors about standing firm in their opinions, persuading others to change their minds, or disbelieving someone's story.

A significant number of prospective jurors reported that they or someone they knew had been victims of a crime. The State elicited

7

detailed information from these people about their prior experiences. Most stated that they were capable of rendering an impartial verdict and were not dismissed. Trial counsel asked some of these people follow-up questions about keeping an open mind, listening to the evidence, or the State's burden of proof, but he did not follow up about the specifics of their prior experiences with crime. At the motion-for-new-trial hearing, trial counsel testified that he based his questioning in part on how the prospective jurors responded to the State's questions, and that he would not have wanted to repeat questions asked by the State.

Moore has failed to establish that trial counsel's performance during voir dire was deficient. The content of trial counsel's voir dire "can be a matter of trial strategy and, if within the broad range of reasonable professional assistance, will not sustain a claim that counsel was constitutionally ineffective." *Taylor v. State*, 302 Ga. 176, 178 (2) (805 SE2d 851) (2017). Accord *Cade v. State*, 289 Ga. 805, 808 (4) (716 SE2d 196) (2011). Likewise, trial counsel's determination of which jurors to strike "is a strategic decision that,

if reasonable, will not support" a claim of ineffective assistance. *Taylor*, 302 Ga. at 178 (2). Here, trial counsel asked many questions of the prospective jurors about their ability to weigh evidence and apply the presumption of innocence. He did not ask prospective jurors detailed questions about their experiences as crime victims, but the State did ask those questions, and trial counsel could have reasonably concluded that the State's questions covered what he would want to know. It was also reasonable for trial counsel to avoid asking potential jurors redundant questions about their prior traumatic experiences. See *Cade*, 289 Ga. at 808-809 (4) (no deficient performance when counsel testified she would listen to the State's questions during voir dire "before making the strategic decision of whether further questioning was in her client's best interest and that she would not do anything to pollute or taint the rest of the jury pool").

Moore has also failed to show how counsel's voir dire prejudiced him. The transcript does not reveal that any potential jurors had a fixed and definite opinion regarding Moore's guilt or innocence or

9

that they were unable to decide the case based on the evidence. To the contrary, the jurors who were empaneled said they could decide the case impartially. See *Cade*, 289 Ga. at 809 (4) (defendant not prejudiced by trial counsel's failure to strike juror when there was no indication juror was unable to be impartial). Because Moore has shown neither deficient performance nor prejudice, his claim of ineffective assistance on this ground fails.

(b) Moore next contends that trial counsel rendered ineffective assistance by making misstatements of both law and fact in his opening statement. Moore raises two alleged errors. First, trial counsel said several times that Moore was charged with "actually shooting" Hindsman, and that the jury should find him not guilty "because there will be no evidence on all of these charges that he shot anyone"—all of which, Moore argues, failed to address the State's theory that *Young* was the shooter and Moore was guilty as a party to the crime. And trial counsel also told the jury, incorrectly, that it was Young, not Moore, who said "do what you do" before Young fired at the victims.

Even assuming that trial counsel erred in these ways and that he rendered deficient performance, Moore has not shown that these misstatements caused him prejudice. To begin with, the jury was instructed that opening statements are not evidence, but rather are "a preview or outline of what [counsel] expect[s] the evidence to be." And trial counsel mitigated the effect of any misstatements in his opening statement through his conduct over the balance of the trial. Although counsel's opening statement failed to address Moore's potential party-to-a-crime culpability, his cross-examination and closing argument focused on precisely that issue. Trial counsel extensively cross-examined Young about his testimony that he "snatched" the gun from Moore. During his cross-examination, Young agreed that when he "snatched" the gun, "it was such a quick movement [that Moore] had no time to even think about [it]." Trial counsel further elicited from Young that Moore never encouraged him to shoot anyone and that he and Moore never discussed bringing a gun to the fistfight. Trial counsel later returned to the "snatching" question with two other witnesses. And in his closing argument,

trial counsel emphasized Young's "snatching" testimony yet again. Trial counsel told the jury, "[I]f you think [Moore] gave him the gun to shoot that young man, then he's guilty. On the flip side, . . . if you believe, like [Young] said, I snatched it from him, then he is not guilty of murder because that was done solely without his knowledge and [in] a quick, brief second."

Given that trial counsel's cross-examination and closing argument focused on showing that Moore was not a party to the crime, Moore has not established a reasonable probability that counsel's failure to bring up party-to-the-crime culpability in his opening statement affected the outcome of trial. See *Williams v. State*, 292 Ga. 844, 848-849 (3) (b) (742 SE2d 445) (2013) (no prejudice from trial counsel's mistake of fact in opening statement when trial court instructed jury that opening statements are not evidence).

As to trial counsel's misattribution to Young of the phrase "do what you do," the trial testimony established that Moore was in fact the one who spoke the phrase. Moore has not shown that counsel's

12

momentary misattribution in his opening statement was reasonably likely to have affected the outcome of trial, especially given the trial court's jury instruction that opening statements are not evidence. Moore's claim of ineffective assistance on this ground fails. See *Williams*, 292 Ga. at 848-849 (3) (b).

(c) Moore contends that trial counsel was ineffective by failing to object to the testimony of Hindsman's grieving mother. In her testimony, the mother, Latisha Calhoun, identified a photo of Hindsman. She went on to describe how she learned of Hindsman's death, how devastated she was, how Hindsman was a "good kid" and a good older brother, and how a candlelight vigil was held in his honor. Moore argues that all of this testimony other than the identification was irrelevant and an attempt to gain the jury's sympathy.

Moore has not shown that trial counsel's failure to object to Calhoun's testimony was deficient performance. At the motion-for-new-trial hearing, trial counsel testified that he generally would not object to a family member testifying that she was overcome with

grief, "because that's normally most cases," but that he would object if a witness started crying on the stand, to minimize prejudice to his client. Striking that balance falls within the bounds of reasonable strategy. See *Kilpatrick v. State*, 276 Ga. 151, 153 (2) (575 SE2d 478) (2003) (noting that the "danger" of having a family member identify the photograph of the decedent "is the risk of a family member's emotional outburst during trial"). And trial counsel might very well have wanted to avoid the appearance of attacking a grief-stricken witness. See id. at 152-153 (2) (reasonable strategy to "avoid appearing insensitive to the mother, who was a sympathetic witness"). So Moore's claim of ineffective assistance on this ground also fails.

(d) Moore also contends that his trial counsel was ineffective in failing to adequately cross-examine three witnesses for the State— victims Marshall and Benard, as well as Young—about the pending criminal charges they faced. Marshall was charged with possession of marijuana with intent to distribute, Benard had at least three open felony indictments for marijuana possession and distribution,

14

and Young was charged with Hindsman's murder and related crimes. All three testified about their charges at trial. Marshall and Benard both stated—Marshall on direct examination, and Benard on cross—that no one had promised them anything in exchange for their testimony. And Young testified that he had pleaded guilty, and that as part of his plea deal he would be sentenced to 35 years, to serve 30, in exchange for his truthful testimony. Marshall and Benard did not say what sentences they faced, but Young testified that his charges carried a maximum sentence of life plus 75 years.

Moore now contends that trial counsel should have impeached these witnesses by pressing them further about their pending charges. He argues that trial counsel should have asked Marshall and Benard about their possible sentences. And he contends that trial counsel should have elicited that Young actually faced a sentence of life without parole—not life plus 75 years—and that Young was therefore underrepresenting the benefit he received by testifying.

Again Moore has not shown deficient performance. The scope

15

of an attorney's cross-examination is "grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." *McCoy v. State*, 303 Ga. 141, 143 (2) (810 SE2d 487) (2018) (citation and punctuation omitted). See also *Watts v. State*, 308 Ga. 455, 460-461 (2) (841 SE2d 686) (2020) (reasonable strategy not to impeach witness with variation in testimony when other avenue of cross-examination could have been more effective); *Lakes v. State*, 266 Ga. 389, 389 (2) (467 SE2d 566) (1996) (reasonable strategy not to impeach witnesses on prior convictions to avoid emphasis on drug activity as a motive for murder). Here, Marshall, Benard, and Young all testified about the "relevant issue": whether they "entertained any belief of personal benefit from testifying favorably for the prosecution." *State v. Vogleson*, 275 Ga. 637, 639 (1) (571 SE2d 752) (2002). As to Marshall and Benard, once it was established that they received no benefit in exchange for their testimony, trial counsel could reasonably have decided not to get into the specific sentences they faced, especially given that the trial court could have prohibited that line of questioning. See *Redding v. State*, 307 Ga. 722, 727 (2)

16

(a) (838 SE2d 282) (2020) (within trial court's discretion to prohibit questions about witness's possible sentence when witness has no plea deal with State that requires his testimony). And as for Young, trial counsel could have reasonably determined that there was no material difference between a sentence of life without parole and a sentence of life plus 75 years when compared with 35 years with 30 to serve, and so Young did not materially underrepresent the benefit he received by testifying. See, e.g., *Benton v. Hines*, 306 Ga. 722, 725 (2) (832 SE2d 801) (2019) (counsel's failure to elicit witness's maximum possible sentence did not prejudice defendant because "the marginal value of additional impeachment" based on that sentence would not "have made a difference in the jury's assessment of [the witness's] credibility").

Because Moore has not shown that trial counsel performed deficiently by failing to further cross-examine these witnesses, his claim of ineffective assistance on this ground fails.[3]

---

[3] We also reject Moore's argument that he was prejudiced by the cumulative effect of trial counsel's deficient performance. "Assessing

17

3. Moore next contends that the trial court deprived him of due process by intimidating Young into testifying for the State, which Moore characterizes as a violation of *Webb v. Texas*, 409 U.S. 95 (93 SCt 351, 34 LE2d 330) (1972).

(a) Before trial, Young had agreed to plead guilty and testify against Moore. But just before opening statements, the trial court reported that Young had decided *not* to testify and that his plea deal was therefore void. Then, in an unrecorded bench conference on the third day of trial, Young explained that he still wanted to plead guilty, but that he did not want to testify because of threats from other inmates in the jail. The next day, Young was brought into court, outside the presence of the jury, and his counsel said that Young had changed his mind again and that he *did* want to testify. The trial court said that it would reinstate the plea deal if Young

cumulative prejudice is necessary only when multiple errors have been shown." *Scott v. State*, 309 Ga. 764, 771 (3) (d) (848 SE2d 448) (2020). Moore has not established multiple instances of deficiency. Of the four claims of ineffective assistance that he raises, we have concluded that in three of them—trial counsel's conduct of voir dire, failure to object to the testimony of the victim's mother, and failure to further cross-examine State witnesses about their pending charges—he failed to show that trial counsel's performance was deficient.

testified. At that point the State suggested that the deal was no longer "on the table." But the trial court told Young that if he testified, he would get the benefit of the deal, even over the State's objection. Young ultimately agreed to testify, and after he testified, the trial court found that he had complied with the plea deal and reinstated it.

(b) Assuming without deciding that the trial court's involvement in Young's decision to testify violated Moore's due process rights, the error was harmless to Moore. A constitutional error is harmless "if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming." *Renfro v. State*, 313 Ga. 608, 613 (2) (872 SE2d 283) (2022) (citation and punctuation omitted). An error can also be harmless if it is "beneficial to the defendant." *Lindsey v. State*, 282 Ga. 447, 450 (2) (651 SE2d 66) (2007) (citation and punctuation omitted). When applying harmless-error analysis, we "review the evidence de novo

and weigh it as a reasonable juror would, rather than reviewing it in a light most favorable to upholding the jury's verdicts of guilty." *Hamilton v. State*, 309 Ga. 1, 10 (3) (843 SE2d 840) (2020) (citation and punctuation omitted).

Here, it is beyond a reasonable doubt that Young's testimony did not contribute to the verdict. Most of Young's testimony about Moore merely restated facts that were already established and undisputed: that Moore was present at the scene, that Moore had a gun, and that Young used that gun to shoot Hindsman. Young's testimony on these points was cumulative of similar testimony from, among others, Dunn and Carson. See *Renfro*, 313 Ga. at 613-614 (2) (harmless error to admit statements that defendant made to police before he was given *Miranda* warnings, when those statements were cumulative of other evidence). As for Young's testimony about the main contested issue—whether Moore was a party to the crime (because he gave the gun to Young) or merely present (because Young took the gun without his permission)—his testimony was, if anything, *helpful* to Moore. As discussed in Division 1 (b), Young

20

testified that he "snatched" the gun from Moore, and that he did so quickly and without Moore's knowledge. Young also testified that when he shouted to Moore to give him the gun, Moore was standing by the open door of the car, "screaming" at Young and his friends that "it's time to go . . . just let it go. Everybody let it go. Come on. Let's go." To a reasonable juror, that testimony would have tended to minimize Moore's involvement in the crime. Indeed, Moore made Young's testimony about "snatching" the gun a centerpiece of his defense that he was *not* guilty as a party to the crime. Because Young's testimony was at worst cumulative of other evidence, and was in many ways favorable to Moore, any error in the trial court's involvement in Young's plea negotiations was harmless beyond a reasonable doubt. See *Renfro*, 313 Ga. at 613 (2).

4. Finally, Moore contends that the trial court improperly "sided with the State" on two occasions at trial—a pre-voir dire attempt to persuade Moore to plead guilty, and a brief comment at trial made after sustaining Moore's hearsay objection. Based on Moore's briefing, we construe this as an argument that the trial

21

court violated OCGA § 17-8-57 (a) (1), which deems it "error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused."[4]  To violate this statute, "the trial court's comments must pertain to a disputed issue of fact." *State v. Gardner*, 286 Ga. 633, 634-635 (690 SE2d 164) (2010).

When we review alleged violations of OCGA § 17-8-57, our standard of review depends on the type of violation. If the trial court expresses an opinion as to the ultimate guilt of the accused, it is reversible error, and the defendant is entitled to a new trial. See OCGA § 17-8-57 (c). But if the trial court merely expresses an opinion as to whether a fact at issue has been proven, then the

---

[4] We address this claim as an alleged violation of OCGA § 17-8-57 (a) because the single case Moore cites in support of this argument, *State v. Anderson*, 287 Ga. 159 (695 SE2d 26) (2010), addresses that statute. Moore also states at the end of the section of his brief on this argument that his "right to due process was denied," but he makes no further or specific argument on this point and cites no authority in support of a due process argument, so we deem any such claim abandoned. See Supreme Court Rule 22. We also express no opinion about whether the trial court's statements may have violated any other legal requirement.

complaining party must make a timely objection. See OCGA § 17-8-57 (a) (2) and (b). Absent a timely objection—and there was no objection here—we review only for plain error. OCGA § 17-8-57 (b). To show plain error, an appellant must show that (1) the alleged error was not affirmatively waived, (2) it was obvious beyond reasonable dispute, and (3) it affected the appellant's substantial rights, which ordinarily means showing that it affected the outcome of the trial. See *Hawkins v. State*, 304 Ga. 299, 302 (3) (818 SE2d 513) (2018). Finally, if those three prongs are satisfied, the appellate court has the discretion to remedy the error only if the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Id. (citation and punctuation omitted).

We see no error, let alone plain error, in the two trial court statements that Moore calls out, because neither of them violates OCGA § 17-8-57 (a) (1). The first statement, in which the trial court recounted some of the alleged circumstances of the crime and explained the potential sentence Moore faced if convicted, took place

before voir dire and without any potential jurors in the courtroom.[5]

We must reject Moore's argument as to this statement on that basis alone: OCGA § 17-8-57 (a) (1) forbids judges from expressing or intimating their opinions about whether facts have been proved "to the jury," so it does not apply to comments made outside the presence of the jury. See *Dugar v. State*, 314 Ga. 376, 382 (1) (c) (877 SE2d 213) (2022).

The second statement that Moore highlights did not violate OCGA § 17-8-57 (a) (1), either. During the direct examination of

---

[5] At that time, the trial court asked Moore whether he still intended to have a jury trial. The trial court said, "I'm not trying to scare you. I'm just trying to tell you the real deal." The trial court then reviewed some of the evidence against Moore, and said:

> I've tried 175 felony jury trial[s] and probably 140 of those were murders, and I have had less than five[,] maybe three at the most[,] not-guilty verdicts. And that's when all the tears flow because right now you have your fate in your own hands and tomorrow you put your fate in the hands of 12 strangers. Now, you may not have fired the gun, but under Georgia's party to a crime [law], you handed him the gun and saying do what you got to do and you taking the gun back from him, makes you just as guilty under the law as if you had fired the shots under party to a crime. Now, you have two fine lawyers with fine reputations. But if you get convicted of felony murder, it's an automatic life sentence and you have to serve 30 years before you can be paroled and they parole about 5 percent a year. Now, maybe the State will give you an offer that's better than they gave the actual shooter.

24

Calhoun, the victim's mother, trial counsel made a hearsay objection when the witness was describing how she learned of Hindsman's death. The trial court said, "All right. I think it is hearsay. Let's see if we can figure a way around it." OCGA § 17-8-57 (a) (1) "does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence." *Pyatt v. State*, 298 Ga. 742, 748 (3) (784 SE2d 759) (2016) (citation and punctuation omitted) (addressing former version of statute with materially similar language). Moore contends, however, that this remark shows that the trial court "was trying to help the State present evidence with its witnesses." That strikes us as an over-reading of this remark. Even assuming the court's use of the pronoun "we" suggested the court was "on the State's side," but see *Gardner*, 286 Ga. at 633, 635 (no violation of OCGA § 17-8-57 (a) (1) when the trial court asked the State whether it had proven venue, the State replied that it had not, and the trial court said, "Why don't we go ahead and do that before we forget it[?]"), the court gave no direction about how the State should present Calhoun's testimony, and the court said

25

nothing further on the subject. And in any event, Moore does not explain how this remark "pertain[ed] to a disputed issue of fact," id. at 634-635, or intimated "the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused," OCGA § 17-8-57 (a) (1).

Because neither of the trial court's statements expressed or intimated to the jury the court's opinions as to whether any facts in issue had been proved or as to Moore's guilt, his claim of error on this ground fails.

*Judgment affirmed. All the Justices concur.*

Decided December 20, 2022.

Murder. Fulton Superior Court. Before Judge Schwall.

*Zell & Zell, Rodney S. Zell*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Juliana Y. Sleeper, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Emily R. Polk, Assistant Attorney General*, for appellee.