318 Ga. 161
FINAL COPY

S23A0802. CHAMBLISS v. THE STATE.

PINSON, Justice.

Raymond Chambliss got into an argument at his home with his girlfriend, Tonia Herring. During the argument, Herring hit Chambliss with an umbrella, and, in response, he retrieved a gun, followed her outside, and ultimately shot and killed her. He was convicted of felony murder.[1] On appeal, Chambliss raises a number of claims. He contends that the evidence was not sufficient to support his convictions as a matter of constitutional due process. He claims

[1] The shooting occurred in the early hours of August 3, 2018. On November 12, 2020, a Monroe County grand jury returned an indictment charging Chambliss with malice murder of Herring (Count 1), felony murder of Herring predicated on the aggravated assault of shooting her (Count 2), felony murder of Herring predicated on the aggravated assault of striking her with a handgun (Count 3), and possession of a firearm during the commission of a felony, to wit, murder (Count 4). After a jury trial from March 22 to 24, 2021, Chambliss was found guilty of Count 2 only. On March 24, 2021, the trial court sentenced him to life. Chambliss, through trial counsel, filed a timely motion for new trial on April 16, 2021, and twice amended it through new counsel. After a hearing, the trial court denied the motion on March 15, 2023. Chambliss filed a timely notice of appeal the same day. His case was docketed to the August 2023 term of this Court and submitted for a decision on the briefs.

three instructional errors: giving an incorrect charge for simple assault and failing to charge two lesser offenses (misdemeanor involuntary manslaughter premised on reckless conduct, simple battery, or battery as a lesser offense of felony murder, and felony involuntary manslaughter based on reckless conduct). And he contends that trial counsel was ineffective for failing to request charges for the same two lesser offenses.

Each claim fails. The evidence was sufficient to support the felony murder conviction as a matter of constitutional due process. As for the claims of instructional error, Chambliss concedes that each is reviewable only for plain error. He has not shown that the given instruction on simple assault contained any obvious legal error and has not established that the trial court obviously erred by failing to charge the lesser offenses of felony or misdemeanor involuntary manslaughter. And finally, for that same reason, his claims of ineffective assistance fail: he has not established that counsel performed deficiently by failing to request charges on lesser offenses that were not available to him. So we affirm his conviction.

2

1. *Evidence Presented at Trial*

The evidence at trial showed the following. Chambliss and Herring met and began a romantic relationship five or six months before her death in August 2018. On the evening of August 2, 2018, Chambliss called at least two neighbors looking for Herring, and he told one of them that he did not want Herring to return to his home that night. According to Chambliss, who testified at trial, Herring had been at his home earlier in the day and he had asked her to leave because she drank too much alcohol. But after he discovered a pill bottle that contained marijuana was missing from his home and suspected that Herring had taken it, he called Herring and she agreed to come back to the home.

A neighbor was at Chambliss's home when Herring arrived. This neighbor had heard Chambliss and Herring arguing over the phone earlier that evening, and the two continued their argument after Herring arrived at the home. During the argument, the neighbor saw Herring hit Chambliss with an umbrella, and the neighbor left soon after.

Chambliss testified that after Herring hit him with the umbrella, he got his gun, loaded it, and told Herring to leave. Herring went outside, and Chambliss followed her with the gun, shot at the ground, and told her to leave his yard. Then, according to Chambliss, Herring started "coming at him with the umbrella" again, so he hit her in the head with the loaded gun to protect himself from the umbrella, and the gun went off.

Chambliss's neighbor heard gunshots and ran outside, and Chambliss asked the neighbor to call 911. As she made the call, the neighbor walked toward Chambliss's house, where she saw him holding Herring's body and telling her to get up.

When officers arrived, Chambliss was still cradling Herring and telling her to wake up, but Herring was dead. Chambliss told both officers that he hit Herring with a gun and it went off. Officers collected evidence at the scene, including a handgun that was found on a sofa in Chambliss's living room.

The medical examiner who performed Herring's autopsy determined that a bullet entered Herring's face and traveled into her

brainstem, and that the injury to the brainstem was fatal. Based on the soot and stippling around Herring's gunshot wound, the medical examiner determined that the gun was fired six to twelve inches away from Herring's face. The medical examiner explained that this was an approximation, and it was possible that the gun could have been closer than six inches. But the medical examiner ruled out that Herring had suffered a "contact wound," i.e., a wound that forms when the muzzle of the firearm is in contact with the skin when the firearm is discharged, due to the absence of searing or burning near the entrance wound.

A GBI firearms examiner determined that the bullet recovered from Herring's body was fired from the gun collected from Chambliss's living room. The firearms examiner found no problem with the safety or during the test-fire of the weapon. The firearms examiner also conducted an "abuse test," which is used to determine whether certain actions will cause a firearm to discharge accidentally, and identified one "abuse failure" with the gun: When the gun was dropped on its butt from a height of four feet with the safety

off, the gun discharged immediately.

2. *Sufficiency of the Evidence*

Chambliss contends that the evidence was not sufficient to support his felony murder conviction as a matter of constitutional due process. When reviewing the sufficiency of the evidence, we view the evidence presented in the light most favorable to the verdicts to determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). In doing so, we do not "weigh the evidence on appeal or resolve conflicts in trial testimony," *Byers v. State*, 311 Ga. 259, 266 (2) (857 SE2d 447) (2021) (citation and punctuation omitted), but instead defer "to the jury's assessment of the weight and credibility of the evidence," *Jones v. State*, 314 Ga. 692, 695 (878 SE2d 502) (2022) (citation and punctuation omitted).

Viewed in that light, the evidence recounted above supported Chambliss's conviction for felony murder predicated on the aggravated assault of shooting Herring. See OCGA § 16-5-1 (c) ("A person

commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice."); OCGA § 16-5-20 (a) (a person commits assault when he "[a]ttempts to commit a violent injury to the person of another" or "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury"); OCGA § 16-5-21 (a) (2) (a person commits aggravated assault when he commits an assault "[w]ith a deadly weapon"). That evidence authorized the jury to conclude that Chambliss and Herring got into an argument, she hit him with an umbrella, and in response, Chambliss retrieved his gun, loaded it, told Herring to leave, followed her outside with the gun, and ultimately shot her in the face, killing her.

Chambliss contends that the State failed to disprove beyond a reasonable doubt his theories of self-defense, defense of habitation, and accident. His story at trial was that his gun fired accidentally after he hit Herring with it to defend himself from her umbrella. But "questions about the existence of justification are for a jury to decide," *Corley v. State*, 308 Ga. 321, 322 (1) (a) (840 SE2d 391) (2020),

7

and the evidence authorized the jury to reject Chambliss's version of events (and therefore his defenses). That evidence included the medical examiner's testimony that the fatal shot was fired approximately six-to-twelve inches from Herring's face, and that she did not suffer a "contact wound" that would have occurred if the muzzle of the gun were in contact with the skin when it was discharged—that is, evidence the jury could have thought was "at odds with" Chambliss's account at trial that the gun went off on impact with Herring's face. See *Ferguson v. State*, 297 Ga. 342, 344 (1) (773 SE2d 749) (2015). And the evidence would also allow the jury to reject the theory Chambliss advanced during closing argument, that he could have dropped the gun after he struck Herring and it accidentally discharged when it fell, either because the jury disbelieved this story (which was not even supported by Chambliss's own testimony) or because the jury could reasonably conclude from the evidence that the bullet would have to travel well over 12 inches from the ground to Herring's face.

Further, the jury was authorized to reject Chambliss's theory

of self-defense on the basis that he could not have reasonably believed that his use of force was necessary to prevent death or great bodily injury to himself from Herring's umbrella. See OCGA § 16-3-21 (a).[2] The jury was also authorized to reject Chambliss's theory of defense of habitation on the basis that it was unreasonable for Chambliss to believe that Herring was attempting, making, or had made an unlawful entry into his home that required deadly force to protect against; the evidence showed that she was invited there, left the home when Chambliss asked her to, and was leaving when he says she came at him with her umbrella. See OCGA § 16-3-23 (3).[3]

---

[2] OCGA § 16-3-21 (a) states:

A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

[3] OCGA § 16-3-23 states:

A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation; however,

9

And, in any event, the jury was authorized to conclude that it was unreasonable to believe that his use of force was necessary to protect against Herring and her umbrella. See *Clark v. State* 307 Ga. 537, 540-541 (1) (837 SE2d 265) (2019) ("The statute [OCGA § 16-3-23] makes plain that . . . the defendant must have reasonably believed that the use of deadly force was necessary.").

3. *Instructional Errors*

Chambliss claims three instructional errors. Because Chambliss did not object to the trial court's jury instructions on any

---

such person is justified in the use of force which is intended or likely to cause death or great bodily harm only if:

(1) The entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence;

(2) That force is used against another person who is not a member of the family or household and who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using such force knew or had reason to believe that an unlawful and forcible entry occurred; or

(3) The person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony.

10

of the grounds he now argues on appeal, we review these claims for plain error. See OCGA § 17-8-58 (b). To show plain error, Chambliss must establish that "(1) the alleged error was not affirmatively waived, (2) it was obvious beyond reasonable dispute, and (3) it affected the appellant's substantial rights, which ordinarily means showing that it affected the outcome of the trial." *Moore v. State*, 315 Ga. 263, 272-273 (4) (882 SE2d 227) (2022). If an appellant makes that showing, the appellate court has the discretion to remedy the error if it "seriously affected the fairness, integrity, or public reputation of judicial proceedings." Id. at 273 (4) (citation and punctuation omitted). We address each claimed instructional error in turn.

(a) *Simple Assault Instruction*

Chambliss contends that the trial court plainly erred when it charged the jury that a person commits simple assault when "he attempts to cause a violent injury to another person." Chambliss's argument appears to turn on the difference between the text of this instruction and the text of OCGA § 16-5-20 (a) (1), which provides that a person commits the offense of simple assault when he

11

"[a]ttempts to commit a violent injury to the person of another." But Chambliss offers no further explanation or authority in support of this argument, and we can discern no material difference between these slightly different articulations of the offense. So Chambliss has not shown either that the trial court committed an obvious error or that it affected his substantial rights. See *Ash v. State*, 312 Ga. 771, 794 (5) (a) (865 SE2d 150) (2021) (concluding the trial court did not plainly err, even though it omitted part of a pattern jury instruction, because the defendant did not cite any controlling authority on point and therefore did not establish that doing so was a clear or obvious error); *Hornbuckle v. State*, 300 Ga. 750, 754-755 (4) (797 SE2d 113) (2017) (concluding that the trial court did not plainly err by failing to further define terms used in its given jury instruction because the trial court gave a complete charge and the defendant did not demonstrate that providing additional definitions would have affected the outcome of the trial).

(b) *Involuntary Manslaughter Instructions*

Chambliss also contends that the trial court plainly erred by

not instructing the jury on misdemeanor and felony involuntary manslaughter.

(i) Chambliss contends that the trial court should have instructed the jury on misdemeanor (or "lawful act") involuntary manslaughter as a lesser offense. Under OCGA § 16-5-3 (b), a person commits misdemeanor involuntary manslaughter "when he causes the death of another human being without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm." On appeal, Chambliss contends that when he struck Herring in the head with the gun, he was acting "lawfully" in self-defense or defense of habitation, but in an "unlawful manner" because he used excessive force and hit her in a way that amounted to reckless conduct, battery, or simple battery.

We have consistently rejected this kind of argument in support of instructing the jury on misdemeanor involuntary manslaughter. "[A] defendant asserting justification by self-defense is not entitled to an additional instruction on involuntary manslaughter under either subsection of OCGA § 16-5-3 on the theory that the defendant

13

used excessive force in self-defense." *McIver v. State*, 314 Ga. 109, 134 (2) (f) n.47 (875 SE2d 810) (2022) (citing *Saylors v. State*, 251 Ga. 735, 737 (3) (309 SE2d 796) (1983); *Crawford v. State*, 245 Ga. 89, 92 (3) (263 SE2d 131) (1980)). In rejecting this argument, we have reasoned that "no crime is committed if the defendant was justified in killing and, if he was not justified, the homicide is not the 'lawful act' required for misdemeanor involuntary manslaughter." *White v. State*, 287 Ga. 713, 720 (3) (c) (699 SE2d 291) (2010). See also *Saylors*, 251 Ga. at 737 (3) (same). Just so here. Thus, Chambliss has not established that the trial court obviously erred in not instructing the jury on "lawful act" involuntary manslaughter. See *White*, 287 Ga. at 714, 719-720 (3) (c) (concluding that the defendant was not entitled to a jury instruction on misdemeanor involuntary manslaughter based on his contention that he acted lawfully in self-defense when he pushed the victim and caused her to hit her head, which led to her death); *Saylors*, 251 Ga. at 735-736, 737 (3) (concluding that the defendant was not entitled to a jury instruction on misdemeanor involuntary manslaughter based on his contention

that he acted lawfully in self-defense when he stabbed the victim at a high school reunion).

(ii) Chambliss also contends that the trial court should have instructed the jury on felony (or "unlawful act") involuntary manslaughter. See OCGA § 16-5-3 (a) ("A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony," and, "upon conviction thereof, shall by punished by imprisonment for not less than one year nor more than ten years."). See also OCGA § 16-1-3 (5) (defining "felony," in relevant part, as "a crime punishable . . . by imprisonment for more than 12 months"). Chambliss argues that this charge was supported by slight evidence that he committed the misdemeanor of reckless conduct by hitting Herring with a loaded gun, which caused her death.

But again, the law does not support Chambliss's theory. Striking Herring with the loaded gun would not be merely misdemeanor

15

reckless conduct. See OCGA § 16-5-60 (b).[4] That specific act would amount to aggravated assault, see OCGA § 16-5-21 (a) (2),[5] a felony, see OCGA § 16-5-21 (b). See also *Johnson v. State*, 281 Ga. 229, 230 (1) (637 SE2d 393) (2006) (concluding there was sufficient evidence to support the defendant's conviction for aggravated assault where the evidence showed the defendant struck the victim in the head with a gun). And if an act causing death is a felony, a requested charge on felony involuntary manslaughter is properly denied, even when the same conduct could also amount to a lesser, misdemeanor offense, such as the reckless conduct Chambliss says the evidence

---

[4] Under OCGA § 16-5-60 (b),

[a] person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his or her act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

[5] Under OCGA § 16-5-21 (a) (2),

[a] person commits the offense of aggravated assault when he or she assaults [i.e., "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury," OCGA § 16-5-20 (a) (2)] . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury.

supports. See *Smith v. State*, 315 Ga. 357, 363-364 (3) (882 SE2d 289) (2022) (concluding the trial court did not err by refusing to instruct the jury on unlawful act involuntary manslaughter predicated on the misdemeanors of discharging a firearm while under the influence of drugs or alcohol, OCGA § 16-11-134, and discharging a firearm on the property of another, OCGA § 16-11-104, where the same conduct amounted to the felony of possession of a firearm by a convicted felon); *Welch v. State*, 306 Ga. 470, 474 (2) (831 SE2d 761) (2019) (rejecting defendant's argument that the trial court erred by not instructing the jury on unlawful act involuntary manslaughter based on the misdemeanor of reckless conduct because the appellant "ignore[d] the fact that all of these acts, under the facts of this case, constitute felonies"); *Hood v. State*, 303 Ga. 420, 427-428 (3) (811 SE2d 392) (2018) (holding that the trial court did not obviously err in failing to charge the jury on appellant's "convoluted theory of involuntary manslaughter based on reckless conduct" where the acts underlying his reckless conduct argument amounted to felonies). Be-

cause Chambliss was not entitled to a jury instruction on felony involuntary manslaughter based on reckless conduct (specifically, hitting Herring in the face with the loaded gun), the trial court did not obviously err in not giving this instruction, and Chambliss has not established plain error.

4. *Ineffective Assistance of Counsel*

Chambliss contends that his trial counsel provided constitutionally ineffective assistance by failing to request jury charges on misdemeanor and felony involuntary manslaughter, the same jury instructions addressed in Division 3 (b) above. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To satisfy the deficiency prong, a defendant must demonstrate that his attorney 'performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms.'" *Reese*

*v. State*, 317 Ga. 189, 199 (4) (891 SE2d 835) (2023) (citation omitted). To establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022). As discussed in Division 3 (b), Chambliss has failed to show that he was entitled to jury instructions on the lesser offenses of felony and misdemeanor involuntary manslaughter, so he also has not established that his trial counsel performed deficiently by failing to request these instructions. See *Matthews v. State*, 311 Ga. 531, 545-546 (4) (a) (858 SE2d 718) (2021) ("[T]he failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel." (citation and punctuation omitted)).

*Judgment affirmed. All the Justices concur.*

Decided December 19, 2023 — Reconsideration denied February 6, 2024.

Murder. Monroe Superior Court. Before Judge Wilson.

*Frances C. Kuo*, for appellant.

*Jonathan L. Adams, District Attorney, Dorothy V. Hull, Jessica B. Haygood, Carolee R. Jordan, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Clint C. Malcolm, Senior Assistant Attorneys General*, for appellee.