NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: January 17, 2024

S23A1179.  WEEMS v. THE STATE.

PINSON, Justice.

On the morning of June 3, 2018, a motorist driving down Bromack Drive in Fulton County saw a man lying in the front yard of a home, covered in blood and shaking back and forth. She called 911, and the man in the yard, Christopher Welch, was taken to the hospital where he died of blood loss from a gunshot wound to his head. As part of the investigation of Welch's shooting, the police entered the home that Welch was found in front of, and law enforcement found Welch's girlfriend, Chloe Dowdy, shot to death in one of the bedrooms. That bedroom belonged to Rufus Weems, who was later convicted of two counts of malice murder and other crimes related to

Welch's and Dowdy's deaths. [1]

On appeal, Weems raises several claims. He contends that the evidence was not sufficient to sustain his convictions as a matter of constitutional due process, and under OCGA § 24-14-6 because the State failed to exclude every other reasonable hypothesis of guilt beyond a reasonable doubt. He challenges the trial court's denial of his motion for new trial on the "general grounds" under OCGA §§ 5-5-

[1] The shootings occurred on the morning of June 3, 2018. On September 14, 2018, a Fulton County grand jury returned an indictment charging Weems with malice murder of Dowdy (Count 1), malice murder of Welch (Count 2), felony murder of Dowdy predicated on aggravated assault with a deadly weapon (Count 3), felony murder of Welch predicated on aggravated assault with a deadly weapon (Count 4), felony murder of Dowdy predicated on possession of a firearm by a convicted felon (Count 5), felony murder of Welch predicated on possession of a firearm by a convicted felon (Count 6), aggravated assault of Dowdy (Count 7), aggravated assault of Welch (Count 8), possession of a firearm during commission of a crime (Count 9), and two counts of possession of a firearm by a convicted felon (Counts 10, 11). At a jury trial from November 4, 2019, to November 14, 2019, the jury returned guilty verdicts on Counts 1-10 (the State nolle prossed Count 11). The trial court sentenced Weems to concurrent life sentences without parole for the malice murders of Dowdy and Welch (Counts 1 and 2); five years without parole, consecutive to Count 2, for possession of a firearm during the commission of a felony (Count 9); and five years without parole, consecutive to Count 9, for possession of a firearm by a convicted felon (Count 10). The remaining counts either merged or were vacated by operation of law. Weems, through trial counsel, filed a timely motion for new trial on December 5, 2019, which he amended through new counsel multiple times. Weems waived hearing on the motion for new trial and, on March 31, 2023, the trial court denied the motion as amended. Weems filed a timely notice of appeal on April 28, 2023. His appeal was docketed to the August 2023 term of this Court and submitted for a decision on the briefs.

20 and 5-5-21. And he claims the trial court erred by not allowing a witness to testify remotely and by commenting on the evidence.

Each claim fails. The evidence was sufficient to support Weems's convictions as a matter of constitutional due process, and it authorized the jury to reject Weems's hypothesis that someone else was the shooter. As for the trial court's ruling on the general grounds, Weems has not established that the trial court applied the wrong standard, and his argument is otherwise not properly before us. The trial court was required to deny his motion for remote testimony under the relevant Superior Court rule after the State objected. And Weems has not shown that the trial court's repeating of a witness's testimony while ruling on an objection was an improper comment on the evidence. So Weems's convictions and sentence are affirmed.

1. The evidence at trial, viewed in the light most favorable to the verdicts, showed the following. At the time of the shooting, Weems was staying in a spare room at the home of Lakesha Reed, who lived with her children, her mother (Carrie Reed) and her

brother (James Jordan III) on Bromack Drive in Fulton County. On the night of June 2, 2018, all of them, including Weems, ordered pizza and watched a movie at home. By 1:00 a.m. on June 3, 2018, everyone had gone to bed—Lakesha, Carrie, and Weems in their respective bedrooms (with the children split between Lakesha's and Carrie's rooms) and Jordan on the couch in the living room. In the early hours of that morning, Jordan woke up because someone was walking from the hall bathroom to Weems's room with a flashlight. Jordan did not see who this was. Separately, Lakesha saw a stranger, who was using his phone as a flashlight, walk into the hallway bathroom that was across from her bedroom. She later identified the stranger as one of the shooting victims, Christopher Welch.

Still later that morning, close to sunrise, Jordan saw Weems leave and return with another man and go into Weems's bedroom. After Weems's bedroom door closed, Jordan heard gunshots. Lakesha and Carrie also heard the gunshots and hid in Carrie's bathroom with Jordan and the children. While in the bathroom, Lakesha and Carrie each looked out a window and saw Weems—

4

who they each described as wearing a white tank top and basketball shorts—get into his car and drive away. Jordan did not see Weems when he looked out the window, but he saw Weems's car driving away.

Around 7:00 a.m. on June 3rd, Cynthia Johnson drove past Lakesha's home, heard gunshots, and saw two men leave the home. One of the men had a dark complexion and a "low haircut" and was wearing a white T-shirt and shorts and carrying a handgun; she saw him get into a car. The other man walked around the side of the building. After seeing this, Johnson stopped at a gas station for a few minutes, then got back in her car and drove by Lakesha's home again, where she saw Welch lying on the ground, covered in blood and shaking. Johnson stopped and called 911. She did not think that Welch was one of the two men she saw leaving the home earlier that morning. In the meantime, Lakesha, Carrie, and Jordan left their hiding place in Carrie's bathroom after they heard a woman outside the home scream. They saw blood throughout the hallway leading to the front door.

Soon after, the police arrived. Welch was taken to the hospital, where he died of blood loss from a gunshot wound. At trial, the medical examiner explained that Welch had suffered two gunshot wounds—one to his hand, which was not fatal, and a second to his head, which caused him to bleed to death.

As part of the investigation of Welch's shooting, the police entered Lakesha's home soon after arriving on June 3rd. Inside, officers found the body of Chloe Dowdy, Welch's girlfriend, in Weems's bedroom. Like Welch, Dowdy had also suffered two gunshot wounds—one to her head, which killed her instantly, and a second to her back.

Jacquelyn Holt testified that Welch and Dowdy had been staying at her apartment, but she asked them to stay somewhere else on the night of June 2nd. Around 11:00 p.m. that night, someone drove Welch to Holt's house and picked up Dowdy.

Welch's mother testified that, two or three years earlier, Welch had brought Weems to her house at least twice, but she did not know whether the two men had stayed in touch. She last saw Welch on

the Wednesday before his death, when he gave her some money. At that time, she saw that Welch had a large amount of cash in his backpack. A backpack full of cash was found at the crime scene. After the shooting, the Reed family gave law enforcement Weems's name. Detective Courtney Murphy testified that Weems also fit Johnson's description of the man she saw outside the house with a handgun. Lakesha, Carrie, and law enforcement tried calling Weems in the hours after the shooting. Lakesha spoke to Weems briefly on the phone, and he denied knowing anything about the shooting and refused to return to her home. Several days after the shooting, law enforcement found Weems and his car at an abandoned apartment building in Jonesboro and arrested him.

2. Weems contends the evidence was not sufficient to support his two convictions for malice murder or his firearms convictions either as a matter of constitutional due process or under OCGA § 24-14-6.[2]

_____

[2] To the extent Weems challenges the sufficiency of the evidence supporting the counts for which he was found guilty but not convicted, those challenges

(a) When reviewing the sufficiency of the evidence as a matter of due process, we view the evidence presented in the light most favorable to the verdicts to determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). In doing so, we do not "weigh the evidence on appeal or resolve conflicts in trial testimony," *Byers v. State*, 311 Ga. 259, 266 (2) (857 SE2d 447) (2021) (citation and punctuation omitted), but instead defer "to the jury's assessment of the weight and credibility of the evidence," *Jones v. State*, 314 Ga. 692, 695 (878 SE2d 502) (2022) (citation and punctuation omitted).

The evidence here was sufficient as a matter of constitutional due process to authorize the jury's guilty verdicts for the two malice murders, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. Viewed in the light most favorable to the jury's verdicts, the evidence showed that

---

are moot because they either merged or were vacated by operation of law. See, e.g., *Beamon v. State*, 314 Ga. 798, 800 (2) n.2 (879 SE2d 457) (2022).

Weems knew Welch, Lakesha saw Welch in the house with a flashlight, Jordan saw someone with a flashlight go into Weems's room, multiple gunshots were heard from his room, Dowdy's body was found shot to death in the same room, and only Weems emerged from the room unharmed. Weems also left the scene immediately after the shooting and while Welch was still alive but bleeding from his gunshot wounds. As discussed further below, the jury was authorized to reject Weems's defense that someone else was the shooter. Together, this evidence was constitutionally sufficient to authorize the jury to find Weems guilty of the two murders and the firearms offenses for which he was convicted.[3] See *Scoggins v. State*, __ Ga. __ (__ SE2d __) (2023).

(b) When a conviction is based on circumstantial evidence, the

---

[3] A certified copy of Weems's prior conviction for robbery was introduced at trial. This, in combination with the evidence that Johnson saw Weems with a handgun and other evidence supporting he shot Dowdy and Welch, was sufficient to support his conviction for possession of a firearm by a convicted felon. See OCGA § 16-11-131 (a)-(b); *Walker v. State*, 281 Ga. 157, 165 (10) (c) (certified copies of prior felony conviction combined with evidence supporting convictions for malice murder and possession of a firearm during commission of a crime were sufficient to support conviction for possession of a firearm by a convicted felon).

State must present sufficient evidence to "exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. Weems contends the evidence that supported his conviction was entirely circumstantial and the State failed to exclude the hypothesis that an alternative suspect, William Jones, killed Welch and Dowdy.

During the investigation of the shooting, an individual named Christina Eaves gave Jones's name to the police as a possible suspect, but Detective Murphy did not interview Jones. Weems called Jones to testify at trial. At trial, Jones denied knowing anything about the shooting at Bromack Drive or any of the individuals involved and said he was with his sister in Auburn, Alabama on the day of the shooting. He did not know that Eaves had given his name to the police as a potential suspect in the shooting and said Eaves was his ex-girlfriend and had been upset about their breakup around the time of the shooting in June 2018.

The evidence was also sufficient under OCGA § 24-14-6. The jury was authorized to reject as unreasonable Weems's hypothesis

that Jones was the shooter based on the evidence discussed above as well as Jones's testimony, which the jury was free to credit, that he was in Alabama at the time of the shooting and that his ex-girlfriend had given his name to police soon after their breakup.[4] See *McNabb v. State*, 313 Ga. 701, 710-711 (1) (b) (872 SE2d 251) (2022) (the evidence, though circumstantial, authorized the conviction for malice murder where testimony established that "other leads and rumors had proven fruitless" and the person defendant hypothesized had committed the crime could not have done so because he was in jail when the crimes were committed).

3. Weems claims that the trial court erred by denying his motion for new trial on the "general grounds." See OCGA §§ 5-5-20 ("In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a

---

[4] Detective Murphy also investigated another suspect, Zaykeya Clark, whose name the detective received in connection with a tip about graffiti at a local library. But Murphy determined that Clark was not in the area at the time of the shooting and excluded him as a suspect. To the extent Weems argues on appeal that the State did not exclude his hypothesis that Clark could have been the shooter, Detective Murphy's testimony that Clark was not present at or near Bromack Drive at the time of the shooting was sufficient for the jury to reject this hypothesis.

new trial before another jury."); 5-5-21 ("The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."). These "general grounds" statutes require the trial judge to sit as the "thirteenth juror" and consider conflicts in the evidence, witness credibility, and the weight of the evidence. *King v. State*, 316 Ga. 611, 616 (2) (889 SE2d 851) (2023). We review whether the trial court exercised its discretion as the thirteenth juror, but the decision to grant a new trial on the general grounds is vested solely in the trial court and not subject to our review. See id.

In its order denying Weems's motion for new trial, the trial court ruled that "Defendant's case is not an exceptional one where the evidence preponderates heavily against the jury's verdicts. On the contrary, the evidence heavily supported the verdicts. Accordingly, the Court declines to exercise its discretion as the '13th juror' to grant Defendant's request for a new trial under sections 5-5-20

and 5-5-21." This order makes clear that the court applied the correct standard to this claim, so it did not abuse its discretion in that respect. See *King,* 316 Ga. at 616 (2) (concluding that the defendant's claim under the general grounds failed because the trial court "found that 'the weight of the evidence does not preponderate heavily against the verdict and the verdict was not contrary to the evidence or the principles of justice and equity'"). Weems's argument is otherwise not subject to review by this Court. See id.

4. Weems claims that the trial court erred by denying his request to present the testimony of Christina Eaves by videoconference.

At trial, Weems asked for Eaves to testify by videoconference under Uniform Superior Court Rule 9.2 (C) (2019). Defense counsel proffered that Eaves, who had left the State after being subpoenaed in Georgia, would testify that William Jones, who was also under subpoena, had confessed to her that he shot Welch and Dowdy. The version of Uniform Superior Court Rule 9.2 (C) in force at the time

of Weems's 2019 trial provided that witnesses "may testify" by videoconference, but that in a criminal case, "a timely objection shall be sustained." Uniform Superior Court Rule 9.2 (C) (2019). The State objected to Eaves testifying by videoconference because it had concerns about Eaves's credibility based on earlier conversations and wanted to be able to confront her in person. So the trial court sustained the State's objection to the presentation of Eaves's testimony by videoconference. The trial court did not rule that Eaves's testimony was inadmissible, however: the court offered to assist defense counsel with securing Eaves's live testimony, including by entertaining a motion for funds to pay her travel expenses or to enforce an out-of-state subpoena. Weems did not take any of those steps and did not call Eaves to testify at trial, but he did call Jones as a witness.

Weems now argues that the trial court abused its discretion by denying his request under Rule 9.2 (C) (2019), but the plain language of that rule does not give a trial court discretion to overrule a

timely objection to a request to have a witness testify by videoconference. See Uniform Superior Court Rule 9.2 (C) (2019) ("In any pending matter, a witness may testify via video conference. . . . In any criminal matter, a timely objection shall be sustained."). Weems offers no contrary reading of the rule. Instead, Weems cites the COVID-19 pandemic as support for granting his request. But his trial predated the implementation of COVID-19-related precautions in Georgia courts. See Order Declaring Statewide Judicial Emergency (Ga. Mar. 14, 2020). And in any event, at no point during the period the COVID-19-related emergency orders were in effect were the rules amended to allow additional remote testimony over objection in criminal trials. See id. Instead, the version of Rule 9.2 (C) that was operative during Weems's trial remained in effect until that Rule was amended effective March 1, 2023.[5]

Weems also contends that not having Eaves's testimony likely affected the verdict and deprived him of a meaningful opportunity

---

[5] As amended, Rule 9.2 still requires trial courts to sustain an objection to a witness testifying by video in a criminal trial. Uniform Superior Court Rule 9.2 (D) (2) (2023).

to present a complete defense in violation of his due process rights under the federal and state constitutions. But this constitutional claim was neither raised nor ruled on below, so it is not properly before us. See *Mahdi v. State,* 312 Ga. 466, 468 (1) (863 SE2d 133) (2021).

5. Weems contends that the trial court erred by improperly commenting on the evidence in violation of his state and federal due process rights, as well as Georgia law, citing OCGA § 17-8-57 (a) (1) ("It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.").[6] Weems did not raise any of these claims below. As a result, his constitutional due process claim is not properly before us, see *Mahdi,* 312 Ga. at 468 (1), and we review his statutory claim for plain error. See OCGA § 17-8-57 (b) ("[F]ailure to make a timely ob-

---

[6] Weems also cites OCGA § 9-10-7, but that statute applies only in civil cases.

16

jection to an alleged violation of [OCGA § 17-8-57 (a) (1)] shall preclude appellate review, unless such violation constitutes plain error which affects substantive rights of the parties."). To show plain error, he must show that the alleged error (1) was not affirmatively waived, (2) was obvious beyond reasonable dispute, and (3) affected his substantial rights, "which ordinarily means showing that it affected the outcome of the trial." *Moore v. State*, 315 Ga. 263, 272-273 (4) (882 SE2d 227) (2022) (citation omitted). If the defendant makes this showing, then this Court may exercise its "discretion to remedy the error only if the error 'seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" Id. at 273 (4) (quoting *Hawkins v. State*, 304 Ga. 299, 302 (3) (818 SE2d 513) (2018)) (alteration accepted).

At trial, Jordan testified that he "heard a lady screaming after 6:30." The prosecutor then asked, "And what do you mean by that?" Defense counsel objected to the question. In addressing the objection, the trial court said, "Why don't you ask a more narrow question. There didn't seem to be ambiguity in the answer. He said he heard

17

a lady scream after 6:30." Weems argues that the trial court's final statement restating the witness's testimony was an improper comment on the evidence.

The trial court's statement did not obviously violate OCGA § 17-8-57 (a) (1) because the trial court did not appear to express or intimate an opinion about the evidence or whether a fact at issue was proven. Instead, the court simply repeated the witness's testimony nearly verbatim in the course of sustaining Weems's objection to the follow-up question, stated that the testimony was not ambiguous, and directed the State to rephrase its question. See, e.g., *Sessions v. State*, 304 Ga. 343, 348 (3) (818 SE2d 615) (2018) ("We have previously explained that the remarks of a judge explaining a reason for his ruling are neither an expression of opinion nor a comment on the evidence.") (punctuation and citation omitted). Absent obvious error, this claim fails.

*Judgment affirmed. All the Justices concur.*